```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                      CASE NO. 19-MJ-08100-WM-1
 3
     UNITED STATES OF AMERICA,
 4                                     West Palm Beach, Florida
                    Plaintiff(s),
 5                                     April 1, 2019
              vs.
 6
     YUJING ZHANG,
 7
                    Defendant(s).      Pages 1 - 32
 8   ------------------------------------------------------------
 9                            HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10            BEFORE THE HONORABLE WILLIAM MATTHEWMAN
                 UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     FOR THE PLAINTIFF(S):  JOHN C. MCMILLAN, ESQ.
13                          UNITED STATES ATTORNEY'S OFFICE
                            500 South Australian Avenue
14                          West Palm Beach, FL 33401
                            (561) 820-8711
15                          john.mcmillan@usdoj.gov

16   FOR THE DEFENDANT(S):  ROBERT E. ADLER, ESQ.
                            FEDERAL PUBLIC DEFENDER'S OFFICE
17                          450 Australian Avenue
                            West Palm Beach, FL 33401
18                          (561) 833-6288
                            robert_adler@fd.org
19

20   TRANSCRIBED BY:        Joanne Mancari, RPR, CRR, CSR
                            Court Reporter
21                          jemancari@gmail.com

22

23

24

25
```

1    Thereupon,

2    the following proceedings were held:

3              THE COURT:  Calling United States of America v. Yujing

4    Zhang, case No. 19 8100-WM.

5              MR. MCMILLAN:  Good morning, your Honor.  John

6    McMillan on behalf of the United States.

7              THE COURT:  Good morning.

8              Raise your right hand.  Please raise your right hand,

9    ma'am.

10             THE DEFENDANT:  Me?

11             THE COURT:  Yes.  Please raise your right hand.  We

12   need to swear you in and place you under oath.

13             You do solemnly swear that the testimony you are about

14   to give will be the truth, the whole truth, and nothing but the

15   truth so help you God?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  What is your name?

18             THE DEFENDANT:  Yujing Zhang.

19             THE COURT:  You are here today for your initial

20   appearance.

21             You can put your hand down, ma'am.

22             You are here today for your initial appearance.  This

23   is your first appearance in this federal criminal case.  You

24   are here because the United States has filed criminal charges

25   against you.

1          I will be advising you of your rights in a few

2    minutes.  But the first thing I want to do is explain to you

3    what you are charged with and what the maximum penalties you

4    are facing are if you are convicted.

5          Before we go on, you will be assisted here in the

6    court by a Mandarin interpreter.

7          Do you wish to proceed with a Mandarin interpreter or

8    do you wish to proceed in English?

9          THE DEFENDANT:  Yes, please translate.  Thank you.  So

10   that it will be more clearly understanding Chinese than in

11   English.  Yeah (in English).

12         THE COURT:  OK.  So let's do this.  I know you speak

13   some English, but let's go ahead and speak -- we will use the

14   Mandarin interpreter.  So let's use the interpreter for all of

15   your questions and answers.

16         All right.  So let me tell you what you are charged

17   with.  You are charged by way of a criminal complaint and

18   affidavit with two counts.

19         The first count is making false statements to a

20   federal officer, in violation of Title 18, United States Code,

21   Section 1001.

22         You are also charged with entering or remaining in a

23   restricted building or grounds, in violation of Title 18,

24   United States Code, Section 1752(a)(1).

25         Now, it is alleged that you committed those offenses

1    on or about the date of March 30, 2019 in the County of Palm

2    Beach in the Southern District of Florida.

3         Both the criminal complaint and the affidavit are

4    signed by a U.S. Secret Service special agent and a federal

5    judge and that is what is brings you before the court.

6         All right.  Now, are you understanding everything here

7    in court today with the aid of the Mandarin interpreter?

8         THE DEFENDANT:  Yes (in English).

9         THE COURT:  Could the Mandarin interpreter please

10   state her name for the record.

11        THE INTERPRETER:  Sure.  Ziaoling Richards.

12        THE COURT:  Good morning, ma'am.

13        THE INTERPRETER:  Good morning.

14        THE COURT:  So I have explained to you what you are

15   charged with.

16        Mr. McMillan, what are the maximum penalties that

17   Ms. Zhang is facing if she is convicted of these offenses?

18        MR. MCMILLAN:  Your Honor, with respect to the making

19   false statements to a federal agent, the charge under Title 18,

20   United States Code, Section 1001.  It is punishable by a

21   maximum term of five years' imprisonment, a three-year term of

22   supervised release, a $250,000 fine, and a $100 special

23   assessment.

24        With respect to the entry into a Secret

25   Service-protected location, it is punishable by a maximum term

1   of one-year imprisonment, a $1,000 fine, and a term of

2   supervised release.

3          With respect to any of the two offenses, it would also

4   carry the high probability of deportation or removal from the

5   United States given the defendant's immigration status in the

6   country.

7          THE COURT:  All right.  Let me ask you on the second

8   offense, the entering or remaining in a restricted building or

9   grounds, that's a misdemeanor, is that right?

10          MR. MCMILLAN:  It is, your Honor.

11          THE COURT:  What is the supervised release term, if

12   you know, the maximum?

13          MR. MCMILLAN:  Certainly, your Honor.

14          THE COURT:  And while you're looking, also what would

15   the special assessment be?

16          MR. MCMILLAN:  It's $25 is the special assessment and

17   there is a one-year term maximum supervised release.

18          THE COURT:  All right.  So, Ms. Zhang, if you are

19   convicted of the first charge, which is making false statements

20   to a federal officer, you are facing up to five years in

21   federal prison, up to three years of supervised release, up to

22   a $250,000 fine, and a $100 mandatory special assessment.

23          If you are convicted of the second offense that is

24   charged, which is entering or remaining in a restricted

25   building or grounds, you are facing up to one year in prison,

1    up to a $1,000 fine, up to one year of supervised release, and

2    a special assessment of $25.

3             If you are not a U.S. citizen, you are facing

4    deportation or removal from the United States after you

5    complete your sentence if you are convicted.

6             So that's what you are charged with and those are the

7    maximum penalties that you are facing if you are convicted.

8    And there is a copy of the criminal complaint and affidavit on

9    the podium in front of you.  That is your copy.

10            Now let me explain the rights.

11            First of all, you are not required to make any

12   statements.  You do have the right to remain silent, and any

13   statement that you do make may be used as evidence against you.

14            You also have the right to retain counsel.  That means

15   you have the right to hire your own lawyer.  You have the right

16   to have your attorney present at all court proceedings.

17            Now, if you cannot afford to hire your own attorney, I

18   can appoint one for you free of charge if I find that you are

19   indigent after I ask you some questions.

20            So let me ask you, are you going to be able to hire

21   your own attorney in this federal criminal case?

22            THE DEFENDANT:  I'm not sure in the United States how

23   much it will cost to hire an attorney.

24            THE COURT:  Well, it is expensive and in a case like

25   this, it would be, I'm sure, many, many thousands of dollars.

1        Now, if you do not have the resources, if you don't

2    have the money available to hire your own attorney, I can

3    appoint an attorney for you and that attorney would represent

4    you and only you and would have allegiances to you.  However,

5    before I could appoint an attorney for you, I have to ask you

6    certain questions about your finances so I can make a

7    determination whether you do not have enough money to pay for

8    your own attorney.

9        So if you'd like, I can go ahead and do an inquiry

10   into your financial status, an indigency inquiry, to determine

11   if you qualify for the appointment of free counsel.

12       Do you want me to do that?

13       THE DEFENDANT:  May I clarify?  Are you saying that in

14   the United States usually if you hire an attorney it costs

15   thousands of dollars and then you will ask me a series of

16   questions and if I qualify, you will give me free attorney?

17       THE COURT:  All right.  Let me just clarify.  There

18   are two options that every defendant in federal court has.  The

19   first option is you go out and you find whatever attorney you

20   want to, you hire that attorney, and you pay for that attorney

21   or your family does.

22       If you believe that you are going to be able to hire

23   an attorney or your family or friends will hire an attorney for

24   you, I can give you a few days to try and make those

25   arrangements to contact whoever you wish to contact and try and

1    hire an attorney.  So that's option one.  You or your family

2    hire your own attorney.  Whatever that will cost will be

3    between you and the attorney.

4              All I was saying earlier is that in federal criminal

5    cases it is customary for attorneys that are hired privately to

6    charge 10,000, 20,000, 30,000 dollars or more depending on the

7    type of case.

8              Now, the second option is for defendants who do not

9    have enough resources to hire their own lawyer, and in that

10   case I have to place the defendant under oath and ask a few

11   questions about your income and your assets so I can determine

12   if you have the financial ability to pay for your own attorney

13   or if you do not have enough money to pay for your own

14   attorney.

15             If I find that you do not have enough money to pay for

16   your own attorney, I can appoint an attorney to represent you

17   and you don't have to pay that attorney any money at all.

18             So do you understand the two options?

19             THE DEFENDANT:  Thank you very much, your Honor.  My

20   question is that me and my family hasn't been in the United

21   States for a long time so we're not familiar with the laws and

22   also with which attorneys are good in this type of law.  So if

23   you will give us a few days to look for an attorney.  I'm not

24   sure if we can find one.  In case we cannot find one in a few

25   days, do you think I can ask the court to appoint me one

1    attorney at a time?

2         THE COURT:  Yes.  What I can do is I can give you,

3    let's say, three days to try and hire an attorney.  You can

4    contact your family, you can contact your embassy, whatever it

5    is you wish to do in an effort to try and hire a private

6    attorney to represent you, and then we can set it for later

7    this week and you can come back to court and if you have been

8    able to hire your own attorney, your attorney can be in court

9    with you that day.  If you are unable to hire your own

10   attorney, you can ask the court at that time to appoint a free

11   attorney for you.

12        Would you like me to give you three days to try and

13   see if you can make arrangements to have your own attorney?

14        THE DEFENDANT:  Yes.  Yes.  That would be great.

15   Thank you so much for giving me this opportunity.

16        THE COURT:  OK.  You're quite welcome.

17        So I am going to set the matter for April 4, 2019 at

18   10 a.m.  That is in federal court in West Palm Beach, Florida,

19   here.

20        So what you should do is between now and April 4th,

21   which is Thursday, is attempt to either reach your embassy,

22   your family or whatever friends you have or to reach an

23   attorney and see if you can hire your own attorney.  If you

24   can't, then you can come back on April 4th and you can tell me

25   then.

```
1            All right.  Do you understand?

2            THE DEFENDANT:  I understand.  Thank you.

3            THE COURT:  So we will set it down for a report re

4    counsel April 4, 2019 at 10 a.m.

5            All right.  So let's turn to a bond hearing.

6            You do have the right to a bond hearing or a detention

7    hearing if the government is requesting that you be held

8    without bond.  If the government requests that you be held on

9    pretrial detention, that means the government is requesting

10   that you be held on no bond in this case in jail until the case

11   is resolved.

12           If the government requests that you be held on

13   pretrial detention, then the court, I will make a determination

14   as to whether you will be detained and held with no bond or if

15   you will be released on bond or other conditions.

16           So let me ask the prosecutor, Mr. McMillan, what is

17   the government seeking as to bond or detention in this case?

18           MR. MCMILLAN:  Your Honor, the United States seeks

19   pretrial detention pursuant to Title 18, United States Code,

20   Section 3142(f)(2)(A) on the basis that the defendant poses an

21   extreme risk of flight.  Your Honor, she has no ties to the

22   United States in general or to the Southern District of Florida

23   in particular.

24           THE COURT:  All right.  And is the government ready to

25   proceed today or are you asking for three days to prepare for
```

1    the hearing?

2            MR. MCMILLAN:  We can proceed today, your Honor.

3            THE COURT:  All right.  So, Ms. Zhang, the government

4    prosecutor is requesting that the court hold you on no bond on

5    pretrial detention in this case.  The government is requesting

6    pretrial detention, arguing that you are a serious risk of

7    flight or nonappearance if you were to be released on bond.

8            Now, the government is ready to proceed to what is

9    called a detention hearing here today.  However, it is always

10   in a defendant's best interest that the defendant have an

11   attorney with them when they proceed to a detention hearing.

12   And you do not have an attorney today.

13           So the government is ready to proceed to that

14   detention hearing today.  However, I would suggest that since

15   you do not have an attorney that the detention hearing be reset

16   for three days, to April 4th, so that you can have an attorney

17   to represent you at the detention hearing.

18           Would you like me to reset the detention hearing for

19   three days, until April 4th, to give you time to have an

20   attorney present and assist you at the detention hearing?

21           THE DEFENDANT:  May I ask, what is a bond hearing?  Do

22   you mean the bond hearing is my family or my friends can pay

23   some bonds and then I can be bonded out and I can be waiting

24   outside while this case is going?

25           THE COURT:  Yes, that is correct.

1          There are two primary things that happen in federal

2     court regarding pretrial release.  In some cases the government

3     makes a request for pretrial detention, and that is what the

4     government is requesting in your case.  The government is

5     saying that you are such a serious risk of flight and

6     nonappearance that you should not be released on bond or other

7     conditions while this case is pending and that you should be

8     detained with no bond.

9          Now, when the government makes that request, when the

10    prosecutor makes that request, it is then up to the court to

11    hold a hearing and decide if I would order that you are

12    detained as the government requests or if I will order that you

13    be released on bond or other conditions.

14         So since the government is requesting pretrial

15    detention, I need to hold a detention hearing to make my

16    decision.  And the government is ready to proceed to that

17    hearing today, but I would strongly suggest that it is in your

18    best interest to have an attorney here representing you when

19    you go to a detention hearing, because that is a very important

20    hearing.

21         Since you have asked for three days to try and hire

22    your own lawyer, it would make sense to set that hearing to

23    three days ahead, that detention hearing, so you can have a

24    lawyer representing you at that hearing.

25         Do you understand all that?

1          THE DEFENDANT:  Yes.  I understand.  Thank you very

2     much, your Honor.

3          OK.  I have a question.  For the next three days,

4     since I'm going to be in the detention center, I wonder how I

5     will be able to find an attorney since I won't be able to get

6     access to phones and I won't be able to contact my family or an

7     attorney.

8          THE COURT:  Well, Ms. Zhang, you are obviously very

9     intelligent because your questions are excellent from the

10    defendant in this situation.

11         What will happen is that I will hold you on temporary

12    pretrial detention until we have a full detention hearing.  So

13    you will be in custody.  However, you will have the right to

14    make phone calls to try and reach your family or your embassy

15    or friends.

16         I am going to ask the marshals in light of the unique

17    nature of this case if you could, in the cellblock, if you have

18    the opportunity, to let her use the phone and let her make some

19    phone calls to try and either reach her embassy or a friend or

20    family.  Because I think it is important that she at least have

21    efforts to obtain counsel.

22         Yes, Mr. McMillan.

23         MR. MCMILLAN:  Yes, your Honor.  The defendant has

24    unfettered access to a telephone at the Palm Beach County jail

25    since the time of her arrest.  She is assigned a pin number

1   over there and can make whatever phone calls she wants to.  And

2   I also know that her consulate was contacted the evening of her

3   arrest.  So the People's Republic of China is well aware of the

4   fact that she has been arrested.

5           THE COURT:  All right.  So what the prosecutor is

6   saying is that your consulate was contacted about your arrest

7   and they know of your arrest.  And also he is advising that

8   once you get to the Palm Beach County jail, you will be given a

9   pin number and allowed to make phone calls.

10          The problem with that, Mr. McMillan, is I believe you

11  have to have money in your account at the jail to make phone

12  calls and I want to make sure that she doesn't sit there for

13  three days unable to make phone calls.

14          So I am going to ask the marshals if she can at least

15  use the phone here to try and make a call to a family or friend

16  to let them know where she is and that family or friend either

17  can come see her or can put money in her account so she can

18  make phone calls out of the Palm Beach County jail.  But I

19  don't want her sitting there without having access to a phone.

20  That's my concern.

21          MR. MCMILLAN:  I understand your Honor's concern.

22          THE COURT:  Go ahead.

23          MR. MCMILLAN:  That concern exists for any defendant

24  in a case.  She does have financial resources, and I would --

25          THE COURT:  What is your concern with allowing her to

1    make a phone call?  I mean, this is a woman from China who is

2    very unfamiliar with our legal system.  So I'm trying to make

3    sure that she is fully aware of her rights and has the right to

4    exercise her rights.

5         Why would you be objecting to her making a phone call

6    from the marshals' cellblock?

7         MR. MCMILLAN:  There are security implications in her

8    doing that in this case, your Honor, which using the marshals'

9    phones do not take into consideration.

10         THE COURT:  All right.  Well, are the marshals able

11    when you take her to the Palm Beach County jail, are you able

12    to make sure that they provide her with access to a telephone

13    even though she may not have money in her account?

14         THE MARSHAL:  Yes, your Honor.

15         THE COURT:  You can?  All right.

16         So then what will happen, Ms. Zhang, is you will be

17    brought back today, you will be taken over to the Palm Beach

18    County jail, and the marshals are going to make sure that you

19    have access to a telephone over there so that you can make

20    phone calls to try and obtain an attorney.

21         Do you understand that?

22         THE DEFENDANT:  Yes, I understand, your Honor.  Thank

23    you very much.

24         One problem is that I -- OK.  So I know that I can

25    make phone calls from the jail, but the phone calls that I can

1    make is only inside the United States.  My family is in China.

2    I wonder if there is a way for me to make an international call

3    and also to find an attorney, I think there are two ways.  One

4    is to contact my family to find an attorney for me and another

5    way is search on the internet myself.  So I wonder if the

6    facility will be able to provide this access for me to find an

7    attorney.

8             Thank you.

9             THE COURT:  Right.  I don't know if they will allow

10   you to make international phone calls.  They will give you a

11   pin number over there which you can make calls from the phone,

12   domestic calls.

13            I would strongly suggest that you reach out to a

14   friend here or an acquaintance or a family member, somebody

15   that you know here in the United States or to your embassy and

16   ask for legal assistance.

17            Do you understand?  All right.  Do you understand?

18            THE DEFENDANT:  I do have a friend here.  The problem

19   is that I need to go on the internet to find his contact, and

20   that's the only way I can find my friend's contact, is to go

21   online.

22            THE COURT:  Right.  I don't believe they are going to

23   allow you to go online at the Palm Beach County jail.  They do

24   have phone books there and other ways to reach people, but they

25   are not going to provide you with internet access, that I'm

```
 1    aware of.

 2              So, again, if you can reach out to somebody and see if

 3    you can hire a lawyer, that is your option one.  And if you

 4    have no ability to hire a lawyer at all because of your

 5    circumstances, then you can ask to have an attorney appointed

 6    for you free of charge.

 7              So as far as your detention hearing, do you want me to

 8    set that until April 4th to give you time to hire a lawyer and

 9    prepare for your detention hearing?

10         THE DEFENDANT:  So if I'm not able to make the

11    international call and I also don't remember my friend's number

12    here and if I cannot have access to online or access to

13    international calls, I don't think I will have a way to find an

14    attorney.

15         THE COURT:  Well, that goes back to what I first told

16    you.  If you don't think you can hire an attorney, I can ask

17    you a few questions right now about your financial status and

18    if you don't have the ability right now to hire an attorney, I

19    can appoint an attorney for you free of charge.  That might be

20    the best option.

21         THE DEFENDANT:  OK.  Hiring an attorney, if possible I

22    would like my family, I would like to be able to talk to my

23    family and discuss with my family for them to hire an attorney

24    for me.  So I would really like to be able to make an

25    international call.
```

1    If not, then I would like to be able to call the

2    Chinese Embassy and see if they can help me contact my family

3    or help me find an attorney for me.

4    If neither of this that I can do, then I don't think

5    it will be possible to -- I will be able to hire an attorney.

6    THE COURT:  All right.  So we will keep it on for

7    April 4th for report re counsel and I would strongly suggest

8    you contact your consulate, your embassy, and ask them to

9    either contact your family or to help you with an attorney and

10    then we can proceed to the detection hearing and the report re

11    counsel hearing on April 4th.

12    So you understand that you are requesting that your

13    detention hearing be reset for three days, until April 4th, so

14    you can get counsel?

15    THE DEFENDANT:  A bond hearing.

16    THE COURT:  Right.  As I said to you earlier, you are

17    going to have a detention hearing.  It is set for this

18    Thursday, April 4th.  And you need to have an attorney, you

19    should have an attorney to represent you at that detention

20    hearing.

21    You asked for three days to try and hire a lawyer.  If

22    you hire a lawyer, then that lawyer will be representing you at

23    your detention hearing.  And since you don't have an attorney

24    today, all I'm asking is do you want to set your detention

25    hearing for Thursday as well so you can be prepared with an

1   attorney to argue your case for bail and release.

2          THE DEFENDANT:  Your Honor, can I ask you something?

3   So I understand just now you say that the court may be able to

4   appoint an attorney for me.  So if on Thursday at the bond

5   hearing, do you think you can appoint an attorney for me even

6   if I have my attorney at the time?  Just in case I don't have

7   an attorney.

8          THE COURT:  Let me answer.  Hold on one second.

9   Ma'am, one second.

10          THE DEFENDANT:  Can I clarify?

11          THE COURT:  Let me just tell you, if you hire your own

12   attorney, I don't need to appoint an attorney for you.

13          THE DEFENDANT:  So what I'm saying is that I

14   understand just now you want me to make a decision whether we

15   have the bond hearing today or three days later and you also

16   say that the court may be able to appoint an attorney for me.

17   So I wonder if we have the bond hearing today, do you think the

18   court can appoint an attorney for me today, then we can proceed

19   with the bond hearing today and then three days later that will

20   be a different hearing, a report hearing, that at the time I

21   may have my own attorney already.

22          Is it possible, your Honor?

23          THE COURT:  Well, first of all, if you want counsel to

24   be appointed today, I have to ask you about your finances and

25   your assets and your income to see if you qualify for the

1    appointment of free counsel.  If I appoint counsel for you

2    today, then it would be up to you and your counsel as to

3    whether or not you wish to proceed to the detention hearing

4    today.  Oftentimes defense counsel request a few days to

5    prepare and get ready for a detention hearing in this type of

6    situation.

7              So the answer to your question is yes, I can appoint

8    an attorney for you today if I find you to be indigent and

9    unable to hire your own attorney, but whether the detention

10   hearing would proceed today with that attorney would be up to

11   you and that attorney to make a decision after you talk to each

12   other.

13             So I really do need to get a decision from you as to

14   whether you want three days to hire a lawyer or whether you

15   want me to ask you questions about your finances here today to

16   see if you qualify for the appointment of the free attorney.

17             THE DEFENDANT:  If the court appointed an attorney for

18   me today for the bond hearing, do you think I can still look

19   for my own attorney for the next three days?

20             THE COURT:  You can always -- if I appoint an attorney

21   for you, if I find that you don't have enough money to hire

22   your own lawyer, you can always later, whether it is three days

23   or three weeks, hire your own attorney if you wish to.

24             Do you understand?

25             THE DEFENDANT:  I understand.  Yes.  Then yes, your

1    Honor.  Thank you.  So I would like your Honor to ask me the

2    questions to see if I qualify for an attorney today.  Thank

3    you.

4            THE COURT:  OK.  So I am going to ask you a few

5    questions.  Please listen very carefully and answer my

6    questions specifically.  Any answer that you give me must be

7    truthful, and false answers could subject you to a prosecution

8    for perjury or making a false statement.

9            You do have the right to refuse to answer my questions

10   but you only have a right to refuse to answer my questions if

11   you have a valid Fifth Amendment privilege against

12   self-incrimination as to answering them.  You are not to lie or

13   make a false statement.

14           So first let me ask you, are you employed?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And what do you do?

17           THE DEFENDANT:  Investment.

18           THE COURT:  Are you an investment advisor or do you

19   make investments?

20           THE DEFENDANT:  I myself invest and I'm also a

21   consultant for a company.

22           Can I add something?

23           THE COURT:  Yes.

24           THE DEFENDANT:  OK.  Also, I'm kind of in the process

25   like I'm working for a company right now as a consultant, but I

```
 1    kind of want to invest myself -- no, I don't mean myself, but I
 2    kind of want to set up another company, my own company, to do
 3    investment.
 4            THE COURT:  All right.  So let me just ask you, what
 5    is the name of the company that you currently work for?
 6            THE DEFENDANT:  OK.  The company that I am working as
 7    a consultant right now is Zhirong.
 8        Assets. (in English)
 9        Assets.
10        Assets Management (in English)
11            THE COURT:  How do you spell the company name?
12            THE DEFENDANT:  Yes.  It's Z-H-I -- it's Shanghai --
13    the full name is Shanghai Zhirong Assets Management's
14    Corporation.  Yes.  Shanghai, yeah.  Z-H-I-R-O-N-G (in
15    English).
16            Shanghai Zhirong Assets.
17            THE COURT:  Does the interpreter know how to spell
18    that?
19            THE INTERPRETER:  Zhirong spells like Z-H-I-R-O-N-G.
20            THE COURT:  Is that correct, ma'am?
21            THE DEFENDANT:  Yes (in English).
22            THE COURT:  Can you tell me approximately how much
23    money you earn each week or each month from that occupation?
24            THE DEFENDANT:  OK.  I don't really get paid like per
25    week or per month, you know, I don't really have a stable
```

1   income with them.  Our agreement is that I will get paid per

2   project.

3          THE COURT:  All right.  Have you been paid any money

4   this year, 2019, as far as income?

5          THE DEFENDANT:  Not for -- no.

6          THE COURT:  Do you have any money saved anywhere in

7   the world?

8          THE DEFENDANT:  My savings are mainly in China because

9   I work in China before.  So I have some savings in China.  In

10  the U.S. I do have an account, but I opened the account was

11  because I was looking for a business partner here in the U.S.,

12  but since there is some policy change, so things have changed,

13  there's not much money there, actually.  Not that much at all.

14  But I can use that money to spend, yes.

15         THE COURT:  Is there more than $5,000 in that account?

16         THE DEFENDANT:  OK.  I'm not sure.  I don't think it

17  would be over 5,000 because every time I come to the U.S., I

18  always make sure that the account have enough money for me for

19  my expenses here.  For example, if I need to go out with

20  clients or friends for dinner and stuff.  Also I need to have

21  enough money for my living expenses.

22         I will always take some cash with me too.  So if I add

23  the cash to it, maybe there would be over 5,000.  I'm not sure.

24         THE COURT:  All right.  And do you own anything like a

25  car or a house that's worth more than $5,000 anywhere in the

1   world?

2          THE DEFENDANT:  I do in China.

3          THE COURT:  Is that a house or a car, or both?

4          THE DEFENDANT:  In China I have a house and I have a

5   car.

6          THE COURT:  Is anybody else holding any money for you

7   anywhere in the world?

8          THE DEFENDANT:  Honestly, I don't have an answer for

9   this question because in China sometimes the parents, they will

10  not tell you until they get to a certain age.  So I don't

11  really know if they hold any money for me or not.

12         THE COURT:  OK.  But aside from your parents, is

13  anybody else holding any money for you?

14         THE DEFENDANT:  Besides my parents, I'm not sure.

15  It's possible that my parents maybe ask somebody else to hold

16  the money.  It's possible.  But I don't know.

17         THE COURT:  All right.  Here's what I am going to do.

18  I think I am going to appoint counsel to represent you;

19  however, I'm going to reserve jurisdiction to determine whether

20  you should be required to pay for all or part of that attorney

21  once I learn more about your financial circumstances.

22         Yes, Mr. McMillan.

23         MR. MCMILLAN:  Your Honor, we still don't know how

24  much money she's got in her bank account in China.  Her house

25  could be worth millions of dollars.  We just don't know.

1          THE COURT:  No, I understand that and I have been

2     trying to get the answers from her.  It appears she has very

3     little money here in the United States.

4          Ms. Zhang, let me ask you, the money that you have in

5     China, are you able to get access to that while you are here in

6     jail?

7          THE DEFENDANT:  No.  No, I'm not.

8          THE COURT:  Can you tell me approximately, if you

9     know, how much money your house in China is worth in U.S.

10    dollars, if you know.

11         THE DEFENDANT:  My house was about 9 million in

12    Chinese money, 9 million renminbi.

13         THE COURT:  Do you know what that is equivalent to

14    here in the United States?

15         THE DEFENDANT:  Maybe 1.5 million.  Yeah.  (in

16    English)

17         THE COURT:  Is that house solely in your house or is

18    it in your name and somebody else's name?

19         THE DEFENDANT:  It's under my name.

20         THE COURT:  Are you able to get any money out of that

21    house?  Do you own a mortgage on that house?

22         THE DEFENDANT:  There's a mortgage, yes.

23         THE COURT:  Do you know how much the mortgage is on

24    the house, approximately, in U.S. dollars?

25         THE DEFENDANT:  35 -- 50 percent in this.  Yeah.  (in

1   English).

2          THE COURT:  All right.  You owe 50 percent mortgage on

3   the property?

4          THE DEFENDANT:  Yeah (in English).

5          THE COURT:  What kind of car do you own in China?

6          THE DEFENDANT:  I have a BMW (in English).

7          THE COURT:  Is that leased or is that purchased?

8          THE DEFENDANT:  This car, it is bought (in English).

9          THE COURT:  And let me ask you, the bank account that

10  you have here in the United States, what bank is that at?

11         THE DEFENDANT:  Wells Fargo (in English).

12         THE COURT:  And you say that you don't believe it is

13  worth -- that there is more than 5,000 in that account?

14         THE DEFENDANT:  I don't think I have more than 5,000,

15  but I'm not sure because I didn't check.  This time when I came

16  to the U.S. I brought some cash, but I didn't check my account,

17  how much money is in there.

18         THE COURT:  All right.  So I am going to go ahead and

19  appoint the federal Public Defender.  I just don't think she

20  has any ready access to the ability to hire an attorney here in

21  this country at this time.  But I am going to reserve

22  jurisdiction to apportion or assign her to pay all or part of

23  the court-appointed counsel's fee or expenses.

24         Yes, Mr. McMillan.

25         MR. MCMILLAN:  You asked -- for the court's

1    information, your Honor, on today's exchange rate her house is

2    worth $1,340,946.

3         THE COURT:  All right.  I understand there is a 50

4    percent mortgage on it, according to the defendant, but that is

5    not liquid assets that she can use immediately to retain

6    counsel, which is why I am going to reserve jurisdiction to see

7    if she should be required to pay court-appointed counsel's

8    costs.

9         All right.  So, Ms. Zhang, I am appointing the federal

10   Public Defender to represent you.

11        Good morning, Mr. Adler.  Good morning, Mr. Adler.

12        MR. ADLER:  Good morning, your Honor.  Robert Adler,

13   assistant public defender.

14        THE COURT:  All right.  Ma'am, you now have a counsel.

15   Your attorney is Mr. Adler here.  He is a very experienced

16   lawyer.  He's been with the federal Public Defender's Office

17   for many years, and he will be representing you.

18        Now, what I think I am going to do is take a break --

19   it's already 12:15 -- and let Mr. Adler speak to his client

20   with the Mandarin interpreter.

21        How long do you think you will need, Mr. Adler?  I can

22   come back at 1:30 or 2:00.

23        MR. ADLER:  I'm not sure, Judge.

24        THE COURT:  What time is my civil hearing this

25   afternoon, Ken?

```
1              THE DEPUTY CLERK:  3:00.

2              THE COURT:  Why don't we do this.  Why don't we come

3    back at 1:45 today.  That will give you time to speak to her.

4              MR. ADLER:  Assuming I have the aid of the

5    interpreter, I can speak to her right now.

6              THE COURT:  And that's fine if you'd like to do that,

7    but this is probably the longest initial appearance I have ever

8    had and, in light of her lengthy responses, I don't think it is

9    going to be a five-minute discussion between you and her.  I

10   could be wrong about that.  If you want to try, we can try.

11             MR. ADLER:  Well, we can try, Judge, because I can

12   tell the court that because of the context of this proceeding

13   today, I would be asking for five days to prepare because we

14   are going to need to arrange for interpreters in order to speak

15   with her and potentially with family or witnesses.  So we would

16   be asking I am sure for five days.

17             If there is an issue, I want her to be aware of that

18   because I don't see how we can effectively prepare for such an

19   important hearing.

20             THE COURT:  I understand that.  That's why I thought

21   you might need more time to explain the situation, how it works

22   over here since she is not a U.S. citizen and she doesn't seem

23   to be completely familiar with the federal criminal justice

24   system.  So I was thinking you might need some time over lunch

25   to sit down and talk with her and since we have the Mandarin
```

1    interpreter here, you would be able to do that.

2             MR. ADLER:  That's fine, Judge.  Again, I will speak

3    with her right now.  It is 12:20.

4             THE COURT:  Why don't you have a seat over there at

5    counsel table, ma'am, with your attorney.  If the Mandarin

6    interpreter could go and translate for Mr. Adler and Ms. Zhang,

7    we can pass the matter for a few minutes.

8             MR. MCMILLAN:  So, your Honor, we should just stay

9    here and not come back at 1:45?

10            THE COURT:  Let's wait and see what Mr. Adler has to

11   say after he has a chance to consult with his client.

12            MR. MCMILLAN:  Yes, your Honor.

13            (Recess)

14            MR. ADLER:  Thank you, your Honor.

15            THE COURT:  All right.  One second here.  Let me get

16   the interpreter ready.

17            We have Mr. Adler, we have Ms. Zhang, and we have the

18   Mandarin interpreter.

19            Let's recall the case, Ken.

20            THE DEPUTY CLERK:  Recalling United States of America

21   v. Yujing Zhang, case No. 19 8100-WM.

22            THE COURT:  We have Mr. McMillan.

23            All right.  Yes, Mr. Adler.

24            MR. ADLER:  I had a very nice conversation with

25   Ms. Zhang.  We are asking that the detention hearing be put off

1    until Monday so that we can adequately prepare.

2             I have received some information from her that

3    hopefully will lead to a productive conversation with

4    ultimately family and others in China.  So we have made inroads

5    this morning.

6             Because of the language barrier and the fact that we

7    are dealing with individuals in China, I know from experience

8    that we need the five days to adequately prepare.

9             THE COURT:  All right.  That does make sense that you

10   would need time to prepare.  This is a very difficult case in

11   light of the foreign issues and the allegations in the criminal

12   complaint.

13            Mr. McMillan, any objection to resetting the detention

14   hearing for five days?

15            MR. MCMILLAN:  No, your Honor.

16            THE COURT:  All right.  What day is that, Ken?  Is

17   that the 8th?

18            THE DEPUTY CLERK:  Yes, Judge.

19            THE COURT:  All right.  So the hearing April 4th is

20   canceled.  There will be no hearing on April 4th.

21            I am going to reset your detention hearing at the

22   defense request to April 8, 2019 at 10 a.m.  That is next

23   Monday.

24            In the meantime you will be held on temporary

25   detention, temporary pretrial detention, until the court can

1    determine after a full hearing if I will order you permanently

2    detained without bond or if I will order you released on bond

3    or other conditions.

4           Now, since you are charged with a criminal complaint

5    and affidavit, you have the right to a preliminary hearing to

6    determine if there is probable cause to believe that you have

7    committed an offense.  Since you are in custody at this time, I

8    am going to set that for April 15, 2019 at 10 a.m.

9           On that date if the government has returned an

10   indictment against you, you will have the right to plead to the

11   indictment.  Typically at that early stage a not guilty plea is

12   entered.  And if by that date an indictment has not been

13   returned, you will have the right to a preliminary hearing for

14   the court to determine if there is probable cause to believe

15   that you have committed an offense.

16          So your next hearing is April 8th for pretrial

17   detention hearing and then April 15th for a preliminary hearing

18   or arraignment.

19          Now, I will tell you that a defendant who is not a

20   United States citizen may request that an attorney for the

21   government or a federal law enforcement official notify a

22   consulate official from the defendant's country of nationality

23   that the defendant has been arrested.  But even without that

24   request from the defendant, a treaty or other international

25   agreement may require consulate notification.

```
1              Mr. McMillan, you have already advised that the

2      Chinese Republic's consulate has been notified by the

3      government?

4              MR. MCMILLAN:  Yes, your Honor.  The embassy for the

5      consulate for the People's Republic of China was notified.  I

6      believe the closest consulate tied to this area is in Houston,

7      Texas.

8              THE COURT:  All right.  So your consulate has been

9      notified.

10             All right.  I think that takes care of everything.

11             Is there anything else from the government on this

12     case this morning?

13             MR. MCMILLAN:  No, your Honor.

14             THE COURT:  Anything else, Mr. Adler, on behalf of

15     Ms. Zhang?

16             MR. ADLER:  No.  Thank you, Judge.

17             THE COURT:  All right.  Thank you.

18             I hope everybody has a good day.

19             (Adjourned)

20

21

22

23

24

25
```

C E R T I F I C A T E


     I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


April 4, 2019            s/ Joanne Mancari
                         Joanne Mancari, RPR, CRR, CSR
                         Court Reporter
                         jemancari@gmail.com