UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cr-80056-Altman/Brannon

UNITED STATES OF AMERICA,

v.

YUJING ZHANG,

Defendant.
_____/

FILED BY _____ D.C.

APR 15 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**PRETRIAL DETENTION ORDER**

The Court, pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, hereby ORDERS the Defendant, YUJING ZHANG, detained pursuant to the provisions of Sections (b), (e) and (f).

The Government moved for pretrial detention of Defendant on the basis that she is a substantial or serious risk of flight or nonappearance. After conducting a lengthy detention hearing in this case on April 8, 2019, and April 15, 2019, the Court specifically finds that no conditions or combination of conditions will reasonably assure the appearance of Defendant as required. The Court finds that Defendant must be detained as a serious risk of flight or nonappearance. The Court makes the following findings of fact with respect to this order for detention:

Factors:

a) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.

Defendant is charged by Indictment with making false statements to a federal officer, in violation of 18 U.S.C. § 1001(a)(2), and entering or remaining in a restricted building or grounds,

in violation of 18 U.S.C. § 1752(a)(1). If convicted of making false statements to a federal officer, Defendant faces up to five years in prison, up to three years of supervised release, and up to a $250,000 fine. If convicted of entering or remaining in a restricted building or grounds, a federal misdemeanor, Defendant faces up to one year in prison, up to one year of supervised release, and up to a $1,000 fine. Defendant is also likely facing deportation or removal after serving any criminal sentence if convicted.

While the offenses with which Defendant is charged are not crimes of violence, violations of section 1951, or federal crimes of terrorism, and do not involve a minor victim or a controlled substance, firearm, explosive or destructive device, Defendant's charges are very serious and appear to have a direct nexus to unlawfully accessing a location where the President, his family, and his staff were located or were thought to be located. As such, the allegations are very serious.

b) The weight of the evidence against the Defendant.

The weight of the evidence against Defendant is strong. The Court takes judicial notice of the information in the Criminal Complaint, the Indictment, and the Pretrial Services Report. The following evidence was established by the Criminal Complaint, the Indictment, the Government's proffer, Defendant's Exhibits #1-9, and the testimony of Special Agent Samuel Ivanovich of the United States Secret Service.

The President of the United States, Donald J. Trump, was in Palm Beach County, Florida, visiting Mar-a-Lago starting on March 28, 2019. During the afternoon of March 30, 2019, Defendant attempted to gain access to the Mar-a-Lago club. She informed a Secret Service agent that she was there to go to the pool and presented two People's Republic of China passports as identification, both in Defendant's name and displaying her photograph. One passport was valid, and the second passport was expired, but it contained a tourist visa that was in effect through 2026.

Once Defendant's identity was confirmed, Defendant's information and passports were provided to Mar-a-Lago security for verification that she was listed on the Mar-a-Lago access list.

Mar-a-Lago security could not find Defendant on the access list, so they called the manager of the Beach Club to verify that she was permitted to go to the pool. Mar-a-Lago security was informed by the Beach Club that "Zhang" is the last name of a member of the Mar-a-Lago club. Security asked Defendant if that member was her father, but she did not give a definitive answer. Because security attributed Defendant's indefinite answer to a language barrier, they allowed her access onto the property. Defendant passed two prominently displayed United States Secret Service restricted access warning signs.

Defendant was then picked up by the Mar-a-Lago valet driver via golf cart shuttle. The driver asked Defendant where she wanted to go, and she responded that she did not know. The driver took Defendant to the main reception area. During the drive, Defendant passed three Secret Service agents and another restricted access warning sign. Upon arrival at the Secret Service-posted main magnetometer checkpoint, Defendant exited the golf cart and stopped in front of yet another restricted access sign. She read the sign for approximately 20 seconds before proceeding through the magnetometers.

Defendant went to the main reception area of the Mar-a-Lago Club, passing two additional restricted access warning signs. A receptionist greeted Defendant and asked her why she was at Mar-a-Lago. Defendant stated that she was there for a United Nations Chinese American Association event later that evening. The receptionist knew the event did not exist and checked all access lists for Mar-a-Lago. Because Defendant did not appear on any access list, the receptionist alerted Secret Service.

Special Agent Ivanovich spoke with Defendant, who stated that she was there to attend a

3

"United Nations Friendship Event" between the People's Republic of China and the United States. She claimed she had arrived early to familiarize herself with the property and take pictures. Defendant showed Secret Service agents a purported invitation to an event on her phone, but the agents were unable to read it as it was in Chinese.

Defendant was taken off the property, and Special Agent Ivanovich interviewed her in English. Defendant became verbally aggressive with agents and was detained and transported back to the West Palm Beach Secret Service office. Defendant was advised of her *Miranda* warnings in English, she advised she understood them, and she signed the warning waiving her *Miranda* rights. Defendant then stated that her Chinese friend "Charles" had told her to travel from Shanghai, China, to Palm Beach, Florida, to attend an event and speak with a member of the President's family about Chinese-American economic relations. Defendant claimed she had only spoken to "Charles" via "WeChat." Defendant claimed that she never said she was going to the pool and that she misunderstood security when they asked her if a member of the club was her father. However, according to the Secret Service agents, Defendant was completely conversational in English.

Defendant was found to have in her possession four cellular telephones, one laptop computer, one external hard drive type device, and one thumb drive. Defendant did not have a bathing suit with her. Defendant told law enforcement that she had so many electronic devices with her at Mar-a-Lago because she felt they would be unsafe in her hotel room. However, after Defendant was arrested, law enforcement determined that she had left numerous electronic devices—including one cellphone, one signal detector, five SIM cards, and nine USB devices—over $7,500 in U.S. currency, $663 in Chinese currency, and multiple credit cards and debit cards in her hotel room while she was at Mar-a-Lago. Moreover, Defendant came within arm's reach of the computers at the Mar-a-Lago reception area.

According to defense counsel, a Young Adventurers event had been scheduled at Mar-a-Lago on March 28, 2019, and was to be attended by the President's sister, but the event was canceled. Defendant paid a man that is believed to be Charles Lee $20,000 on February 19, 2019, for a vacation package to attend the event. Mr. Lee told Defendant she would be permitted to arrive at Mar-a-Lago before the event.

However, a preliminary analysis of Defendant's cell phone and her "WeChat" conversations with a contact named "United Nations Charles" established that "Charles" informed Defendant on March 26, 2019, that the event had been cancelled. Although Defendant responded and asked "Charles" why the event had been cancelled, she flew to the United States two days later. Therefore, according to the Government, Defendant knew the alleged event had been cancelled before she ever attempted to gain access to Mar-a-Lago.

c) The history and characteristics of the Defendant.

Defendant was born in 1986 in Shanghai, China. She is 33 years old. She is a citizen of the People's Republic of China and has lived there for her whole life. Defendant has lived alone at the same residence for the last five years, and her family sometimes stays with her. She has never been married and has no children.

Defendant graduated from the University of Shanghai with a degree in economics. Defendant has also obtained a graduate degree. She allegedly has worked in investments as a consultant at Shaghai Zhirong Assets Company for several years, although this employment has not been verified. Defendant travels outside the People's Republic of China for her job. Defendant's income is unknown and, according to Defendant, is variable because it is based on how many projects she completes. Defendant owns an unencumbered vehicle and owns her residence in the People's Republic of China, which is worth over $1 million. She has a savings

5

account in the People's Republic of China and a Wells Fargo account in the United States. Defendant has no physical or mental health issues, and she uses no illegal substances. She is a very intelligent woman.

Defendant has traveled to the United States in July 2016, January 2017, December 2017, September 2018, and then, finally, on March 28, 2019. There is an immigration detainer on Defendant because her B1/B2 visa has been revoked by the State Department.

d) The criminal history of the Defendant.

Defendant has no criminal history in the United States.

e) The likelihood of the Defendant's appearance in court if released.

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." *United States v. Price*, 773 F.2d 1526, 1527 (11th Cir. 1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on her status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure her presence at trial. *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985); *United States v. Qazi*, No. 12-60298-CR, 2012 WL 7050588, at *3 (S.D. Fla. Dec. 19, 2012).

Based upon all of the evidence and information presented, and for the reasons stated in open court, this Court finds that there is no condition or combination of conditions of release which will reasonably assure Defendant's presence if Defendant is released. The Court finds that there is a serious risk that Defendant will flee or fail to appear if released. Based on the nature of the charges, the weight of the evidence, the sentence that Defendant is facing, the fact that the grand jury has made a probable cause finding, the fact that Defendant was carrying so many electronic devices when she was arrested, the fact that Defendant's seemingly innocent

explanations about why she was at Mar-a-Lago and why she had the devices with her have been refuted by the Government, Defendant's strong family, employment, and residential ties to the People's Republic of China, her complete lack of lack of ties to the Southern District of Florida and to the United States, the fact that she has the financial resources to flee, the fact that there is an immigration detainer on her, the surreptitious nature of Defendant's conduct, the fact that she would likely be deported or removed after serving any criminal sentence, the recommendation of Pretrial Services that Defendant be detained, and the fact that there is no extradition treaty between the People's Republic of China and the U.S, this Court finds that Defendant is a substantial or serious risk of flight or nonappearance.

Accordingly, it is hereby **ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 15th day of April, 2019.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE