```
 1                 UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                  FORT LAUDERDALE DIVISION

 4                 CASE NO. 19-80056-CR-RKA

 5


 6    UNITED STATES OF AMERICA,        .

 7              Plaintiff,             . Fort Lauderdale, Florida
                                       . June 11, 2019
 8              v.                     . 10:03 a.m.

 9                                     .
      YUJING ZHANG,                    .
10                                     .
              Defendant.               .
11    . . . . . . . . . . . . . . . . .

12

13

14

15                    -  -  -  -  -

16           Transcript of Calendar Call had

17        before the Honorable Roy K. Altman,

18          United States District Judge.

19                    -  -  -  -  -

20

21

22

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

```
 1   APPEARANCES:

 2   For the Government:   Rolando Garcia
                          Assistant U.S. Attorney
 3                        United States Attorney's Office
                          500 South Australian Avenue
 4                        Suite 400
                          West Palm Beach, Florida  33401
 5
     For the Defendant:   Robert E. Adler
 6                        Kristy Militello
                          Assistant Federal Public Defenders
 7                        Federal Public Defender's Office
                          450 Australian Avenue South
 8                        Suite 500
                          West Palm Beach, FL  33401
 9
     Court Reporter:      Francine C. Salopek, RMR, CRR
10                        Official Court Reporter
                          United States District Court
11                        299 E. Broward Blvd., Room 205F
                          Fort Lauderdale, Florida 33301
12                        (954)769-5657

13                          -   -   -   -   -

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          TUESDAY, JUNE 11, 2019, 10:03 A.M.

 2              (The Judge entered the courtroom)

 3          THE COURT:  Good morning.  Please be seated.

 4          ROOM CLERK:  Calling Case Number 19-80056-Criminal,

 5   United States of America vs. Yujing Zhang.

 6          Counsel, please state your appearances for the record.

 7          MR. GARCIA:  Good morning, your Honor.  Rolando Garcia

 8   on behalf of the United States.

 9          THE COURT:  Good morning, sir.

10          MS. MILITELLO:  Good morning, your Honor.  Kristy

11   Militello and Robert Adler on behalf of Ms. Zhang.

12          THE COURT:  Good morning to you.

13          THE COURT REPORTER:  Excuse me.  You're on the PA.

14          THE COURT:  Good morning.

15          Ms. Zhang, you've been provided with translation

16   equipment.  Is the equipment working properly?

17          THE DEFENDANT:  (In English) Uhm, not so well.  But

18   it's a small room, I can hear.  Thank you.

19          THE COURT:  Okay.  Would you like to just proceed in

20   English?

21          THE DEFENDANT:  (In English) Uh, maybe -- sometimes

22   maybe Chinese, too.

23          THE COURT:  Okay.  Well, what do you prefer to do?

24   You have to choose whether you prefer to do it in English or in

25   Chinese.  You have a certified -- hold on a second -- you have
```

1  a certified interpreter here who's happy to help you, or we can

2  do it in English, and if there's something that you don't

3  understand, we can ask him to translate it for you.  What would

4  you prefer?

5       THE DEFENDANT:  *(In English)* I prefer later *(sic)*.

6  Thank you.

7       THE COURT:  So, you'd rather do it in English.

8       THE DEFENDANT:  *(In English)* Yes.

9       THE COURT:  And then if you don't understand

10  something, we'll ask him to translate?

11       THE DEFENDANT:  *(In English)* Thank you for your help.

12  Thank you.

13       THE COURT:  Is that right?

14       THE DEFENDANT:  *(In English)* Yeah.

15       THE COURT:  Okay.  So, sir, thank you very much.  What

16  I think we'll do is we'll conduct this hearing in English, and

17  if at some point, she decides that she needs a translation of a

18  particular word or phrase, we'll call you into service.  Is

19  that okay?

20       THE INTERPRETER:  Yes.

21       THE COURT:  Thank you very much.

22       So, I've reviewed the notice to the Court that was

23  filed by defense counsel between the last hearing and today.

24  Let me hear you on that for a moment.

25       MS. MILITELLO:  Your Honor, we had the opportunity to

1   meet with Ms. Zhang at length, a couple of hours.  And as a

2   result of that meeting, our -- any concerns we had about her

3   mental health were put at ease.  And it is our position that

4   she is making the decision, although perhaps an ill-advised

5   one, to represent herself at her -- she's doing so rationally,

6   and it is her own decision to do so.  And we believe that she's

7   competent to make that decision.

8           I also followed up with her family.  I spoke with her

9   father.  And we don't believe that there is any history of a

10  significant mental illness such that the Court should be aware

11  of that or need to perform any additional inquiry on that

12  matter.

13          And I've also become aware of a private defense lawyer

14  who met with Ms. Zhang, and Ms. Zhang advised him that she did

15  not want his services or the services of the federal public

16  defender.  So, it doesn't appear to be an issue with my office.

17  She just is persistent about her desire to represent herself

18  pro se.

19          THE COURT:  And so, I take it -- last time I think I

20  granted a motion to conduct a competency evaluation.  I take it

21  that you either want me to just deny that as moot or you just

22  want to withdraw that motion.  Is that correct?

23          MS. MILITELLO:  Yes.  If we made that motion, I would

24  withdraw it.  I had concerns because Ms. Zhang wasn't meeting

25  with us about why the change and why she wanted to represent

```
1    herself pro se.  But given that we've -- excuse me -- since had
2    a meeting with her, and we've been able to talk about that, I
3    no longer believe that an evaluation is necessary.
4            THE COURT:  How much time have you spent with
5    Ms. Zhang over the course of your representation?
6            (Discussion had off the record between counsel)
7            MS. MILITELLO:  I would say in excess of 20 hours.
8            THE COURT:  Okay.  And how many meetings does that
9    comprise?
10           (Discussion had off the record between counsel)
11           MS. MILITELLO:  I would say probably more than half a
12   dozen.
13           THE COURT:  Is there anything else you want to say on
14   that?
15           MS. MILITELLO:  No, your Honor.
16           THE COURT:  Thank you very much.
17           Ms. Zhang, do you still want to proceed without a
18   lawyer?
19           THE DEFENDANT:  Uh --
20           THE COURT:  Why don't you sit up and speak into the
21   microphone?
22           THE DEFENDANT:  Do I need to stand up?
23           THE COURT:  No.
24           THE DEFENDANT:  Oh, thank you.
25           Before it start, can I just ask how many person
```

1  present this meeting and the listing of -- the names of the

2  meeting today *(sic)*?  Because I just want to be sure that it is

3  secure, yeah.

4          THE COURT:  I'm sorry, could you ask me that again?

5          THE DEFENDANT:  For security, right?  I just want to

6  make sure that -- can I know all of the persons here -- can I

7  have a name list of all of person present this meeting

8  today *(sic)*?

9          THE COURT:  This hearing today?

10          THE DEFENDANT:  Yeah.

11          THE COURT:  Well, you know who I am.

12          THE DEFENDANT:  Yes, I think so, maybe.

13          THE COURT:  I'm the judge.

14          THE DEFENDANT:  Un-huh.

15          THE COURT:  And this is my court reporter.  She writes

16  everything down that is said in the courtroom.

17          THE DEFENDANT:  Oh.  Nice to meet you.

18          THE COURT:  And that's why we're not able to speak at

19  the same time.  You remember we had that issue last time.  And

20  you'll see, if we proceed with you as your own lawyer, that's

21  going to be an issue throughout the whole case, because lots of

22  people want to talk at a trial, but she can only type what one

23  person is saying at one time.  And so, that will be important

24  for both of us to remember, that when you're speaking, nobody

25  else should be speaking, and when I'm speaking, nobody else

1  should be speaking.  Do you understand that?

2          THE DEFENDANT:  Uhm, yes.  You mean only one speaking

3  in a meeting, right?

4          THE COURT:  Correct.

5          THE DEFENDANT:  Not simultaneously, right?

6          THE COURT:  That's correct.

7          Now, the only exception to that, of course, is where

8  there's a translation because the person who is being spoken to

9  doesn't understand English.  And because all of our proceedings

10  have to happen in English, we provide what's called

11  simultaneous translation through the audio phone, which you

12  were benefitting from last time, but you've asked me not to do

13  here today.

14          So, this is my courtroom deputy.  She runs the

15  courtroom and does all of the organizational and scheduling

16  issues.

17          This is your interpreter.

18          Those are your lawyers, and that's the prosecutor.

19          In the back of the room, there's people from the

20  public, because we have a right in this country to have these

21  proceedings be public.  And, frankly, anybody can come in and

22  watch or hear what's going on.  And, frankly, anybody can order

23  a transcript of these proceedings and read what happened at

24  this hearing.

25          There is one exception to that.  If there was

1    something that you wanted to tell me about your own private

2    discussions with your lawyers, and you wanted to do that in

3    public *(sic)*, then we would seal the courtroom only for the

4    limited purpose of addressing that concern involving a

5    conversation between you and your lawyers, because those

6    conversations are private.

7              Does that answer your question?

8              THE DEFENDANT:  Can you -- sorry -- can you -- I beg

9    your pardon.  Can you repeat the last two sentence *(sic)*, just

10   I didn't catch --

11             THE COURT:  Yes, sure.

12             So, there's a right to a public trial and public

13   proceedings under the United States Constitution.  So, anybody

14   can come in and watch and listen to these proceedings, and

15   anybody can order a transcript from the court reporter of the

16   proceedings and read what happened in court here today.

17             But there is a limited situation under which, if you

18   or your lawyer wanted to tell me something that happened

19   between the two of you in private, say a conversation that you

20   guys had together, those communications between the two of you

21   are what's called attorney-client privileged.  They are secret.

22   And so, if you wanted to tell me about a conversation that you

23   had with each other, then I could kick everybody out and seal

24   the courtroom and the transcript, but only for the limited

25   purpose of dealing with that private communication.  Once we

1  stopped talking about that private communication, I would then

2  have to ask everybody to come back in for the rest of the

3  hearing.

4      Does that make sense?

5      THE DEFENDANT:  Um-hum.  Thank you.

6      THE COURT:  And because she's writing down everything

7  that you say, one thing we're going to talk about is you can't

8  say "hum-hum," because there's no word for that.  So, you just

9  say "yes" or "no."

10     THE DEFENDANT:  Oh, yes.

11     THE COURT:  Okay.  So, having heard all of that, do

12 you still, like you did last time, want to proceed on your own

13 as your own lawyer in this case?

14     THE DEFENDANT:  Uh, yes.

15     THE COURT:  So, you want to fire the lawyers that have

16 been provided to you?

17     THE DEFENDANT:  Uh, can I know what's the meaning to

18 the -- I mean -- character, or like what's the --

19     THE COURT:  The purpose?

20     THE DEFENDANT:  Yes, like that.

21     THE COURT:  The purpose of the hearing today is for

22 three things.  The first was to decide whether you were

23 competent enough to make the important decision of whether you

24 wanted to proceed on your own or with a lawyer.  That's the

25 first thing.

1          The second thing is, if I decided that you were

2     competent to make that decision, to proceed with another

3     inquiry, that is, me asking you questions about whether you

4     know all of the pitfalls, all of the consequences of proceeding

5     by yourself.

6          And then the third point is, once we've moved past

7     that, is to have what's called a calendar call, where we decide

8     to set a trial date for your case and go over a number of

9     logistical things with respect to your trial.

10          Does that make sense?

11          THE DEFENDANT:  Yes.  Thank you.

12          THE COURT:  So, my question to you then is, just to

13     get to the important point in this hearing:  Do you still want

14     to proceed without your lawyers, that is, by yourself as your

15     own lawyer at this trial?

16          THE DEFENDANT:  This is my opinion.  I mean, I can do

17     it by myself.

18          THE COURT:  I know that you think that you can.  But

19     my question is:  Is that what you want to do?

20          THE DEFENDANT:  Yes.

21          THE COURT:  That you want to do it?

22          THE DEFENDANT:  I insist on my opinion.  I want to do

23     it by myself.

24          THE COURT:  Okay.

25          All right.  So, we're going to go through all of the

1  questions I asked you last time to make sure that you really

2  mean it this time.  Okay?

3            THE DEFENDANT:  Okay.

4            THE COURT:  Have you ever studied law?

5            THE DEFENDANT:  Uh, yes.

6            THE COURT:  When have you studied law?

7            THE DEFENDANT:  Uhm, you mean what kind of law?

8            THE COURT:  When?  When did you study law?

9            THE DEFENDANT:  When?  Several years ago.

10            THE COURT:  Several years ago?

11            THE DEFENDANT:  Yes.  What kind of -- it depend on

12  what kind of laws.

13            THE COURT:  Have you ever studied Chinese law?

14            THE DEFENDANT:  Yes.

15            THE COURT:  When did you study Chinese law?

16            THE DEFENDANT:  Several years ago.

17            THE COURT:  And have you ever studied American law?

18            THE DEFENDANT:  Yes.

19            THE COURT:  When did you study American law?

20            THE DEFENDANT:  Several months ago.

21            THE COURT:  Before you were arrested or after?

22            THE DEFENDANT:  Uhm, after.

23            THE COURT:  And how much time did you spend studying

24  American law?

25            THE DEFENDANT:  It's hard to calculate.

1           THE COURT:  A lot of time?

2           THE DEFENDANT:  It's hard to calculate, yeah.

3           THE COURT:  Hours?

4           THE DEFENDANT:  I cannot -- you know, to be, ah, value

5    of volume like -- volume like that *(sic)*.

6           THE COURT:  Sorry, I didn't understand that.

7           THE DEFENDANT:  I cannot calculate it out.

8           THE COURT:  I don't need you to tell me exactly.

9    Nobody could do that.

10          THE DEFENDANT:  Yeah.

11          THE COURT:  I'm just asking you if you've spent hours

12   or just minutes studying American law?

13          THE DEFENDANT:  Hours.

14          THE COURT:  Hours.  Would you say it was many hours?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  Okay.  Have you ever represented yourself

17   in any case?

18          THE DEFENDANT:  I never have a case.

19          THE COURT:  So, you've never been in court before.

20          THE DEFENDANT:  Yes.

21          THE COURT:  Before these proceedings.

22          THE DEFENDANT:  Yes, I mean I never been before.

23          THE COURT:  To court.

24          THE DEFENDANT:  Yeah.

25          THE COURT:  And so, you've never represented yourself

 1   in a criminal case, obviously, right?

 2           THE DEFENDANT:  Yes.

 3           THE COURT:  Do you understand that you have been

 4   charged by indictment in this case?

 5           THE DEFENDANT:  Yes.

 6           THE COURT:  Do you understand that the indictment was

 7   returned by a grand jury, and that's a different group of

 8   citizens than the jury that will ultimately rule on your guilt

 9   or innocence?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand that the indictment

12   contains two charges, two counts against you?

13           THE DEFENDANT:  Can you -- I beg your pardon?

14           THE COURT:  So, I think your lawyer has put a copy of

15   the indictment in front of you.  Are you looking at it?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Are you able to read and write in English?

18           THE DEFENDANT:  Yes.

19           THE COURT:  So, the indictment contains two charges

20   against you.  I want to read the two charges against you, okay?

21           THE DEFENDANT:  Hum, I don't -- sorry.  I have

22   understand it *(sic)*?

23           THE COURT:  I'm going to read them to you, so pay

24   attention.

25           Count 1 charges you with unlawful entry of restricted

1    buildings and grounds.  It charges that on March 30th of 2019,

2    in Palm Beach County, in the Southern District of Florida, you

3    did knowingly enter and remain, and that you attempted to enter

4    and remain in a restricted building and grounds, that is, the

5    Mar-a-Lago Club and its grounds, without lawful authority to do

6    so, in violation of federal law.

7              Do you understand the charge contained in Count 1?

8              THE DEFENDANT:  Yes.  You read it.

9              THE COURT:  Do you understand it?

10             THE DEFENDANT:  Yes.

11             THE COURT:  In Count 2, you're charged with making

12   false statements.  Specifically, Count 2 charges that on or

13   about March 30th of 2019, in Palm Beach County, in the Southern

14   District of Florida, in a matter within the jurisdiction of the

15   Department of Homeland Security, the United States Secret

16   Service, an agency of the executive branch of the government of

17   the United States, you did knowingly and willfully make a

18   materially false, fictitious, and fraudulent statement and

19   representation to a Department of Homeland Security, United

20   States Secret Service agent, that is, when you were asked

21   whether you were authorized to be at the Mar-a-Lago Club and

22   its grounds, you said that you were there to attend a "United

23   Nations friendship event" when, in truth and in fact, and as

24   you then and there well knew, no such event was scheduled at

25   Mar-a-Lago and its ground, in violation of federal law.

1          Do you understand the charge contained in Count 2?

2          THE DEFENDANT:  Yes.  You read it, and I heard it.

3          THE COURT:  Okay.  And I'm not asking you to admit

4   that you did it.  That's not what I'm asking.  I'm just asking

5   whether you understand it.  Is that a yes?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Sorry, you have to speak into the

8   microphone.

9          THE DEFENDANT:  Uh, yes.

10          THE COURT:  Now, do you understand that the charges

11   contained in Counts 1 and 2 carry significant criminal

12   penalties?

13          THE DEFENDANT:  Uh, yes.

14          THE COURT:  In particular, if you are convicted of

15   Count 1, and we won't know that until your trial, if you are

16   convicted of Count 1, I can impose a maximum term of

17   imprisonment on you of up to one year, followed by up to one

18   year of supervised release, and up to a $1,000 fine, plus a

19   special assessment fee of $25.

20          If you are convicted of Count 2, I can impose a

21   maximum term of imprisonment on you of up to five years,

22   followed by up to three years of supervised release, and up to

23   $250,000 in fines, plus I must impose a special assessment fee

24   of $100.

25          Do you understand that those are the maximum possible

1   penalties that you're facing on Counts 1 and 2?

2           THE DEFENDANT:  Yes.  You read it, and I heard it.

3           THE COURT:  Okay.  But do you understand it?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Now, do you also understand that in

6   addition to having a penalty for Count 1 and for Count 2 that

7   I've just described, I could, at your sentencing, decide to run

8   those two sentences for Count 1 and Count 2 together, that is,

9   simultaneously, or consecutively, that is, separately?  Do you

10  understand that?

11          THE DEFENDANT:  Uh, yes.

12          THE COURT:  So, for example, if I sentenced you to the

13  maximum term of imprisonment for Count 1 and Count 2, I could

14  either sentence you to five years for Count 2 and one year for

15  Count 1, and run them together, so that you would only serve a

16  total of five years in prison, or I could run them separately,

17  or what we call consecutively, so that you would serve a total

18  of six years in prison.  Do you understand that?

19          THE DEFENDANT:  Uh, yes.

20          THE COURT:  Do you understand that your sentence, if

21  you are found guilty, will be computed pursuant to the United

22  States Sentencing Guidelines?

23          THE DEFENDANT:  Sorry?

24          THE COURT:  Have you heard of the United States

25  Sentencing Guidelines?  We talked about them last time.

1          THE DEFENDANT:  Sorry.

2          THE COURT:  Do you want me to explain them to you?

3          THE DEFENDANT:  Yeah, if you could.

4          THE COURT:  Of course.

5          The United States Sentencing Guidelines are guidelines

6   that are promulgated, that is, they are passed by a commission

7   in Washington called the United States Sentencing Commission.

8   The United States Sentencing Guidelines will assign you a

9   particular score for your offense level and a separate score

10  for your criminal history category.  And then what we will do

11  is we'll map those two scores on an "X" and "Y" axis, and we

12  will come up with what's called an advisory guideline range for

13  you.  It's a guideline range because there's going to be a low

14  end and there's going to be a high end.  And it's advisory

15  because I could either impose a sentence within that guideline

16  range, or I can impose a sentence below that guideline range,

17  or I can impose a sentence above that guideline range.  The

18  only thing I can't do is give you a sentence that is above the

19  statutory maximums that we discussed already provided by law

20  for Counts 1 and 2.

21          Do you understand how the sentencing guidelines might

22  apply to your case?

23          THE DEFENDANT:  Do you mean that still me *(sic)* -- is

24  it the same meaning that's -- you are explaining the highest

25  years I can be sentenced, right?

1      THE COURT:  No.  The highest years that you could be

2   sentenced, the maximum penalties that you face, which we talked

3   about before, is different than the sentencing guidelines.

4      THE DEFENDANT:  Oh.

5      THE COURT:  Basically what will happen is, let's

6   assume, for example, that you're convicted as to Count 1.  The

7   maximum that I can give you for Count 1 is one year.  But in

8   determining whether I should give you zero or six months, or

9   one year, or anything in between, we would use the sentencing

10  guidelines to help us compute what the appropriate guideline

11  range between zero and one is.  Do you understand that?

12     THE DEFENDANT:  Uhm, between zero and the one year?

13     THE COURT:  Correct.

14     THE DEFENDANT:  So, this is a guideline.

15     THE COURT:  The zero and the one year would not be a

16  guideline.  That is the law.  I could never go below zero, and

17  I could never go above one year.

18     THE DEFENDANT:  Um-hum.

19     THE COURT:  But you could argue to me at sentencing,

20  "I deserve zero," and the government could argue at sentencing,

21  "No, she deserves one year."  So, how do I go about deciding

22  whether you deserve zero or three months or six months or one

23  year, we're talking about as to Count 1?  The way we do that,

24  I'm telling you, is we have a book called the sentencing

25  guidelines.

1          THE DEFENDANT:  Oh.

2          THE COURT:  This is the book.  And for every kind of

3    offense, for example, the offense that you're charged with in

4    Count 1, unlawful entry of restricted buildings, or the charge

5    that you're charged with in Count 2, making a false statement,

6    there is a particular guideline that will apply to it.  That's

7    the offense level.

8          On the other hand, we take your individual criminal

9    history.  It sounds like you're probably going to have zero

10   criminal history points, so you're going to have the lowest

11   level, which is level 1.  We're going to take your offense

12   level based on the count for which you were convicted, and then

13   we're going to take criminal history category I, your criminal

14   history category, and we're going to come up with a guideline

15   range.  Say, for example, the guideline range might be six to

16   ten months, or six to 12 months.  And so, I -- what I'm telling

17   you now is that that guideline range is advisory.

18         The only thing that's mandatory is the maximum

19   permitted by law.  I can never give you more than the maximum.

20   But if the guideline range were, say, four to ten months, I

21   could give you three months, or four months, or six months, or

22   ten months, or even 12 months, because that range is just a

23   guide.  It's advisory.  I don't have to follow it.  Do you

24   understand that?

25         THE DEFENDANT:  Uh, yes.

1          THE COURT:  Do you understand that if you represent

2    yourself, you will be on your own, completely on your own, and

3    I will not be able to help you with all of the many technical

4    and difficult decisions that lawyers face in criminal trials,

5    even if I want to?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So, for example, do you understand how a

8    criminal trial works?

9          THE DEFENDANT:  Hum, I can work it out.

10         THE COURT:  But do you understand now how we would go

11   about selecting a jury?

12         THE DEFENDANT:  I've heard it before, but --

13         THE COURT:  Why don't I tell you a little bit about

14   it.

15         We're gonna bring in about 40 to 45 people from the

16   community to come in to be what's called venire panel members.

17   "Venire" is just a fancy word for the people that come in to be

18   selected for a jury.

19         They're going to sit this way.  Juror Number 1 is

20   gonna sit in this chair closest to my courtroom deputy in the

21   front.  Do you see it, the gray chair there?

22         THE DEFENDANT:  Hum-hum.

23         THE COURT:  And we're going to have seven chairs lined

24   up.

25         THE DEFENDANT:  Hum-hum.

1      THE COURT:  They're going to be arrayed one through

2  seven, and then they're going to be arrayed eight, nine, ten,

3  11, 12, 13, 14, 15, and then 16, all the way down to the end.

4  Does that make sense?

5      THE DEFENDANT:  Hum-hum.

6      THE COURT:  And then in the back, there's going to be

7  six in each row, until we get to the end of the venire.  And

8  what's gonna happen is, I'm gonna ask those people questions

9  about whether they can be fair and impartial jurors in your

10  case.  Do you understand that?

11      THE DEFENDANT:  Ah, can you repeat the last sentence

12  again?

13      THE COURT:  I'm going to ask all of those people

14  questions --

15      THE DEFENDANT:  Hum-hum.

16      THE COURT:  -- to determine whether or not they can be

17  fair and impartial jurors in your case.

18      And then I'm going to allow the lawyer for the

19  government and you, on your own behalf, to ask them questions

20  as well, to determine whether they can be fair and impartial

21  jurors in your case.

22      And then we're going to ask them all to leave, and

23  then we're going to go between you and the government, and

24  we're going to ask you to pick a jury together.  And the way we

25  do that is, each of you is allowed an unlimited number of what

```
1    we call cause strikes.  That is, any time that you think that a
2    juror cannot be fair, because, for example, the juror said, "I
3    don't like criminal defendants," or "I don't like police
4    officers," if the juror said, "I can't do those things," "I
5    can't be fair," "I can't trust a police officer," or "I can't
6    trust a person who was born in a foreign country," then we
7    would strike that juror from the panel.  That person wouldn't
8    be fair and impartial.
9         Then, with what's left, you're going to have ten
10   strikes to strike anybody you want for any reason.  And the
11   government will have six strikes to strike anybody they want
12   for any reason.
13        And hopefully, at the end of that process, we'll be
14   left with 12 jurors, 12 people from the community, who will sit
15   in those chairs and will be fair and impartial judges of the
16   facts in your case.
17        Do you understand that?
18        THE DEFENDANT:  Ah, when you say "strike," means pick
19   up?  Does it --
20        THE COURT:  Cut out.  When you strike, you cut out
21   that person.
22        THE DEFENDANT:  Oh.
23        THE COURT:  Does that make sense?
24        THE DEFENDANT:  Yes.
25        THE COURT:  Okay.  So that's how the jury will get
```

```
 1   picked.
 2          Once the jury is seated, they'll swear to follow my
 3   instructions, and then we'll go to opening statements.
 4          The government is going to make the opening statement
 5   first.  Typically, your lawyer would then make an opening
 6   statement on your behalf.  Although, because you have a right
 7   under the Constitution not to speak unless you want to, your
 8   lawyer doesn't have to make an opening statement if you don't
 9   want her to.  Do you understand that?
10          THE DEFENDANT:  Uhm, do you mean that, uhm, if I don't
11   want to, no one will talk representative of me (sic), right?
12          THE COURT:  That's correct.  If you don't want to have
13   a lawyer, you can proceed on your own.
14          But what I'm trying to tell you is, that because you
15   have a constitutional right to be on your own if you want to,
16   but you also have a constitutional right not to testify, you
17   are going to be in a difficult strategic position, because the
18   government is going to stand up and make an opening statement
19   to the jury about why they think you should be found guilty.
20   And then you're going to have a choice about whether you're
21   going to stand up and tell your side of the story in opening
22   statement to the jury.  Do you understand that?
23          THE DEFENDANT:  Yes.
24          THE COURT:  Okay.  Now, after that, there are going to
25   be lots of complicated decisions to make with respect to
```

1  witnesses.  Because it's the government's burden -- you know

2  that they have the burden to prove you guilty, you don't have

3  any burden to prove anything -- the government is going to call

4  its witnesses first.  And the way that will proceed is, the

5  government will call a witness to the stand and begin asking

6  that witness questions.  The witness will then answer

7  questions.  That's called direct examination.

8          After the government is done asking questions of the

9  witness, you will then have an opportunity to ask that witness

10  your own questions and to have that witness answer your

11  questions.  But, again, because you don't have any burden to do

12  anything, you're going to have a choice to make, with respect

13  to each witness, about whether you want to ask that witness

14  questions or not.

15          Sometimes lawyers decide not to ask a witness

16  questions for strategic reasons.  One of those reasons can be

17  the witness didn't say anything that was bad for you, so you

18  decide, I don't need to ask them any questions; they were good

19  for me.  Or you might decide that you know that the government

20  is going to get to go last with that witness, because when

21  you're done asking questions on cross-examination, the

22  government gets to come back to that witness and clean up

23  anything that you may have asked that witness that they think

24  is hurtful to them.

25          And so, if you decide, I don't want to ask that

```
 1  witness any questions, then you would prevent the government
 2  from asking redirect questions of that witness.  So that's
 3  going to put you in a difficult strategic position.  Do you
 4  understand that?
 5          THE DEFENDANT:  Oh, can you repeat the last sentence?
 6  Sorry.
 7          THE COURT:  No problem.
 8          THE DEFENDANT:  Can you explain it again?
 9          THE COURT:  The point is that the government with each
10  witness will go first and last, and you will go in the middle.
11          THE DEFENDANT:  Oh, yes.
12          THE COURT:  But the government doesn't get to go last
13  if you don't go in the middle at all.  So, you're going to have
14  a difficult strategic decision to make, because some of the
15  witnesses might say things that are hurtful to you, and so you
16  may want to ask them questions.
17          On the other hand, you will know that if you ask them
18  questions, the government will then have an opportunity to come
19  back and maybe try to clean up any questions that you asked of
20  that witness.  Does that make sense?
21          THE DEFENDANT:  Uh, yes.
22          THE COURT:  Now, once the government is done
23  presenting all of its witnesses, we're going to get to the
24  point where the government decides to rest.  That means that
25  your case has begun.
```

```
1              Now, again, you have a constitutional right not to do

2    anything -- not to testify, not to present any witnesses, not

3    present any evidence in your case -- if you don't want to, and

4    no one -- not the jurors, not me, not anyone else -- is allowed

5    to judge you or to hold that decision against you in any way.

6              So, again, at that point in the trial, you're going to

7    be faced with a very difficult strategic decision, because you

8    may want either to testify on your own or you may want to

9    present evidence or witnesses to testify on your behalf.  But,

10   again, if you do that, then the government is going to be able

11   to cross-examine you and cross-examine those witnesses by

12   asking tough and difficult questions.

13             Does that make sense?

14             THE DEFENDANT:  Cross-examine?

15             THE COURT:  Cross-examine means ask questions.

16             THE DEFENDANT:  Okay.

17             THE COURT:  Do you understand that?

18             THE DEFENDANT:  Uh, a little bit, not so much, but,

19   yeah.

20             THE COURT:  But if you don't understand that, how can

21   you go and represent yourself in this very complicated criminal

22   trial?

23             THE DEFENDANT:  I mean, just -- uhm, for the last

24   sentence, I didn't catch you again.

25             THE COURT:  Oh, well, then I will repeat it.
```

```
 1              What I was saying is, you're going to be faced with a
 2    difficult strategic choice.  Because you have two
 3    constitutional rights that are balanced.
 4              THE DEFENDANT:  Um-hum.
 5              THE COURT:  And they're both directly opposed to each
 6    other.  One constitutional right is the constitutional right to
 7    testify and to present evidence in your own defense.
 8              The other constitutional right is the constitutional
 9    right to remain silent, not to testify, and not to present any
10    evidence in your own defense.  And no one can hold that
11    decision against you.
12              Do you understand that those are two constitutional
13    rights that you have, and that they're directly opposite to
14    each other, and you're going to have to make the decision by
15    yourself, without the help of a trained lawyer, of which one of
16    those to choose?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Okay.  And do you understand that if you
19    present evidence or testify yourself, the government is going
20    to be able to do what you had the opportunity to do when it was
21    the government's case, that is, to ask questions of you and
22    your witnesses in the hopes of trying to show that the
23    government's case is better than yours?  Do you understand
24    that?
25              THE DEFENDANT:  Yes.
```

1    THE COURT:  Now, if you decide to present witnesses or

2  evidence during your case, then the government is going to have

3  a final opportunity to do what we call "rebuttal," which is to

4  present additional witnesses and additional evidence after you

5  have rested.  Do you understand that?

6    THE DEFENDANT:  Yes.

7    THE COURT:  So that will put you in yet another

8  difficult strategic position, where you're going to have to

9  decide in advance of starting your case whether you want to

10  present evidence, given that you will know that the government

11  may, if it chooses, decide to rebut or contradict that evidence

12  in its rebuttal case later on.  Do you understand that?

13    THE DEFENDANT:  The last sentence, I mean --

14    THE COURT:  I'll repeat it.

15    THE DEFENDANT:  Yeah, sorry.

16    THE COURT:  In addition to the difficult strategic

17  choice you have between your two opposite constitutional

18  rights, you're going to have a difficult strategic choice when

19  you decide what to do in your case, because the government will

20  then, if you present evidence in your case, have the right to

21  come back and present additional evidence as part of their

22  rebuttal case or closing case.  Do you understand that?

23    THE DEFENDANT:  Yes.

24    THE COURT:  Now, after all of that is done, we're

25  going to have to work on jury instructions.  Do you know what

```
 1   those are?
 2            THE DEFENDANT:  No.
 3            THE COURT:  Jury instructions are the instructions on
 4   the law that I have to give the jurors.  Because there are
 5   actually two kinds of judges in our criminal trials.  There's
 6   the judge of the law, and that's me, and there are the judges
 7   of the facts, and those are the jurors.
 8            I tell the jurors what the law is, and they decide
 9   what the facts show, whether they show that you are guilty or
10   not guilty, given the law that I instruct them on.
11            Do you understand that?
12            THE DEFENDANT:  Ah, I didn't catch your -- you mean
13   two judges?
14            THE COURT:  There's just two different roles to play
15   in terms of judging in the trial.  I'm the only judge, and that
16   means that I'm the judge of the law, and the only law that is
17   permissible in this trial is the law that I instruct to the
18   jurors.
19            But the jurors have a role in judging, as well,
20   because they're the judges of the facts.  The facts that are
21   presented by both sides in the case, the jurors will have to
22   weigh them, they'll have to decide who's telling the truth and
23   who's not, who's remembering and who's misremembering.  And,
24   ultimately, it will be their job to decide whether you are
25   guilty or not guilty of the charges contained in the
```

```
 1   indictment.

 2           Do you understand that?

 3           THE DEFENDANT:  Uh, yes, I think so.

 4           THE COURT:  So, in order for me to give them the law,

 5   what we do is called a charge conference.  What that means is,

 6   the lawyer for the government and you will present to me

 7   proposed instructions on the law.

 8           Now, you don't have to make the instructions up,

 9   because there's a book of pattern jury instructions in criminal

10   cases that applies in our court.  And so, what you do is, you

11   go through the pattern jury instructions and propose the

12   instructions to me that you think apply.  But under my rules,

13   you're going to have to confer on whether or not a particular

14   instruction applies, and if you disagree, tell me where the

15   disagreement is.  I'm going to go through the government's

16   instructions, and I'm going to go through your instructions at

17   the charge conference, and I ultimately will make the decision

18   about which specific instructions I'm going to tell the jurors

19   is the law in the case.  Do you understand that?

20           THE DEFENDANT:  You mean there are several guidelines,

21   different guidelines, and you decide what kind of guidelines to

22   tell to jury?

23           THE COURT:  Yeah, but we don't call them guidelines.

24   Guidelines has to do with sentences.  We call them

25   instructions.
```

1         THE DEFENDANT:  Oh.

2         THE COURT:  Does that make sense?

3         THE DEFENDANT:  Yes.  Well, there is several

4   instructions?

5         THE COURT:  There are going to be many instructions.

6   There are going to be instructions as to each count in the

7   indictment; there are going to be instructions about your

8   constitutional rights; there are going to be instructions about

9   how the jurors should go about judging the credibility of

10  witnesses; there are going to be instructions to the jurors

11  about how they should fill out the verdict form, which is the

12  form where it says that you're guilty or not guilty.  There are

13  going to be instructions to them about what their conduct as

14  jurors needs to be.  Does that make sense?

15        THE DEFENDANT:  Yes.  Thank you.

16        THE COURT:  Okay.  So, we're going to have to work

17  together -- you, the government, and me -- to come up with a

18  set of instructions that is both accurate on the law and

19  helpful to the jurors, so that they can understand what the law

20  is and apply it to the facts of the case.  Do you understand

21  that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Now, after we're done with that charge

24  conference, we're going to proceed to closing arguments.

25  That's the final opportunity of the lawyers -- or, in your

1    case, you -- to present your arguments to the jury about why

2    they should find you either guilty or not guilty.  Do you

3    understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And the way the arguments go is, as with

6    everything else, the government goes first, because it's their

7    burden to prove you guilty.  And then you will go second.  And

8    then the government will get to go last, just like in the rest

9    of the trial.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And then at the very end of the arguments,

12   the jurors will be given their instructions, or, if you would

13   prefer, and ask me to give the instructions beforehand, I will

14   do that.  So, depending on what you prefer, I'll either give it

15   to them before or after.  But either way, once the jury has

16   been given its instructions, and once the lawyers or parties

17   have finished their closing arguments, the jurors will go back

18   to the jury room to begin what's called their deliberations.

19             Those deliberations are an opportunity for the jurors

20   to take as much time as they need to discuss with themselves --

21   sometimes argue with themselves -- about what they think the

22   right verdict or the right result in the case is.  Those

23   deliberations are entirely private and culminate in or end in

24   the jurors coming out and telling us what their verdict is --

25   either guilty or not guilty.  Do you understand that?

```
1         THE DEFENDANT:  You mean -- you mean what's -- you
2  mean the past -- the jury is going to decide -- well, right?  I
3  mean what's (sic) the jury works out their decision?
4         THE COURT:  Yes.  The jury is the one that's going to
5  work towards their decision, and the jury is the one that's
6  going to decide whether you are guilty or not guilty of the
7  charges contained in the indictment.  Do you understand that?
8         THE DEFENDANT:  Yes.
9         THE COURT:  And if they find you not guilty, then
10 that's the end of your case.  And if they find you guilty, then
11 we will proceed to sentencing to decide what the appropriate
12 sentence in your case might be.  Do you understand that?
13        THE DEFENDANT:  Yes.
14        THE COURT:  Are you familiar with the Federal Rules of
15 Evidence?
16        THE DEFENDANT:  A little bit.
17        THE COURT:  Last time I asked you if you were familiar
18 with them, and you told me that you were going to work hard to
19 study them.  Have you taken the opportunity to do as you told
20 me you were going to do and started to study the rules of
21 evidence?
22        THE DEFENDANT:  Not yet.
23        THE COURT:  Okay.  Why not?
24        THE DEFENDANT:  Because just like you say, I -- I can
25 have two choices, right?  Because I don't need to testify
```

1  myself.

2          THE COURT:  But the federal -- that's true.  And I'm

3  glad you pointed that out.  But the Federal Rules of Evidence

4  govern how evidence is admitted into the trial, so that the

5  jury could see it and review it during their deliberations.

6          And it also could help you, because if the government

7  tries to introduce pieces of evidence that are inadmissible,

8  that it is illegal for them to put into evidence, you will need

9  to know the rules of evidence so that you can stand up and

10 object.  And if I agree with you, I will sustain your

11 objection, that is, I'll grant your objection and prevent the

12 government from showing that piece of evidence to the jury.

13         So, it's very important that you study the rules of

14 evidence so that you can understand the rules that apply in

15 trying to either prevent the government from admitting evidence

16 that you don't want, or that will allow you, if you choose to

17 do so, to admit evidence that you do want.  Do you understand

18 that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  So, are you going to study up on

21 the rules of evidence that apply in this case?

22         THE DEFENDANT:  I will take your advice.  Thank you.

23         THE COURT:  Okay.  It's not advice, but I think you

24 should -- if you want to represent yourself, it makes sense for

25 you to learn those rules.  Does that make sense?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, do you know the Federal Rules of

3  Criminal Procedure?  We talked about this last time as well.

4          THE DEFENDANT:  Uh, I've heard a little bit.  I mean,

5  I've read a little bit, yes.  But is there a difference *(sic)*

6  edition -- I mean, and different explanation of it.  So....

7          THE COURT:  I'll make sure your lawyers give you the

8  latest edition of both the Federal Rules of Evidence and the

9  Federal Rules of Criminal Procedure so that you have the latest

10  edition that's available to the government.  Okay?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Have you taken a look at any edition of

13  the Federal Rules of Criminal Procedure?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that the Federal Rules

16  of Criminal Procedure are the rules that will govern how the

17  trial is conducted.  That means that they will govern all the

18  time lines and deadlines that will apply at the trial, and the

19  procedure that the trial will follow, kind of like the

20  procedure that I've just described to you, going from jury

21  selection all the way to the end of trial?  Do you understand

22  that?

23          THE DEFENDANT:  Hum, yes, most of it.

24          THE COURT:  So, all of the things that I've just

25  talked to you about, about how the jury will be selected, and

1    about how the opening statements will go, and how the

2    government's case will go before your case, all of those things

3    are laid out in the Federal Rules of Criminal Procedure.  Do

4    you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Do you understand that you will be

7    required to abide, to follow, all of the very technical rules

8    of procedure and evidence that apply in American criminal

9    trials, and that I won't be able to step in and help you with

10   those rules, even if I want to, because you're going to be your

11   own lawyer?  Do you understand that?

12           THE DEFENDANT:  I didn't catch you very well.

13           THE COURT:  I'll explain it again.

14           There are very technical rules of evidence that govern

15   how evidence is admitted and how it can be shown to the jury,

16   and procedure that govern the process of the trial and the case

17   in general, and you will be required to follow all of those

18   very technical rules, if, indeed, you're permitted to represent

19   yourself in this case.  Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And even if I wanted to step in and help

22   you with a few hints here and there to help you along, I won't

23   be able to do that, because you're going to be all on your own.

24   Do you understand that?

25           THE DEFENDANT:  Yes.

1      THE COURT:  I must advise you under federal law that

2  in my opinion, a trained lawyer would defend you far better

3  than you could defend yourself.  I think it is unwise of you to

4  try to represent yourself, given the serious criminal penalties

5  that you are facing.  You are not familiar with the law, you

6  are not familiar with court procedure, you've never been a

7  lawyer, you've never represented yourself, you've never

8  represented anybody else, you're not familiar with the rules of

9  evidence.  And I strongly urge you not to try to represent

10  yourself in this case.  Do you understand that?

11      THE DEFENDANT:  I heard your position and your opinion

12  of me, yes.

13      THE COURT:  Do you understand that you have a right to

14  the effective assistance of counsel for the promotion of your

15  own defense?  And that if you can't afford your own lawyer, I

16  will appoint a different lawyer for you for free?  Do you

17  understand that?

18      THE DEFENDANT:  Uh, I heard what you say of my

19  right -- you mean counsel?

20      THE COURT:  Yes.

21      THE DEFENDANT:  What does it mean by "counsel"?

22      THE COURT:  Lawyer.

23      THE DEFENDANT:  Oh.  So it means lawyer?

24      THE COURT:  Yes.

25      THE DEFENDANT:  I heard what you say about my right.

1    Thank you.

2         THE COURT:  But do you understand that if your problem

3    is either with these lawyers or with that private lawyer,

4    whoever it was that you met with, and you just decided, I don't

5    like these two lawyers, they don't have my best interest at

6    heart, or that private lawyer, I didn't like him or her either,

7    I will appoint you a different lawyer free of charge?

8         THE DEFENDANT:  Yes, I heard your suggestion.

9         THE COURT:  That's not my question.  Do you understand

10   that I will do that for you today, if you want?

11        THE DEFENDANT:  Yes.  I heard your advice.

12        THE COURT:  Now, in light of the serious criminal

13   penalties that you might suffer if you are found guilty of the

14   charges that have been brought against you, and in light of all

15   of the difficulties of representing yourself and the pitfalls

16   involved with self-representation, do you still wish to

17   represent yourself and to give up your right to be represented

18   by a lawyer in this case?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Is your decision to go on your own to

21   represent yourself entirely voluntarily?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Did anybody threaten or force or coerce

24   you in any way in order to get you to fire your lawyer and to

25   proceed on your own?

1           THE DEFENDANT:  No.

2           THE COURT:  Did anybody make you any promises or

3   assurances or guarantees of any kind in order to get you to

4   fire your lawyer and to proceed on your own?

5           THE DEFENDANT:  No.

6           THE COURT:  I find that the defendant has knowingly

7   and intelligently and voluntarily waived her right to counsel.

8           I also find, given the amount of time that I have

9   spent in court with the defendant, which, by my calculation, is

10  now approaching about two hours, and the about 20 hours that

11  defense counsel has spent with the defendant, that there is no

12  issue with respect to her competency.  I find, in fact, that

13  she is quite intelligent, and that she understands very well

14  all of the things that I have said, that she's an extremely

15  rational person.

16          I think she's making a very bad decision, but I also

17  think that the decision is her own decision, that it's made

18  freely and voluntarily and with a full understanding of all of

19  the consequences of her decision, including the many pitfalls

20  that attend her self-representations, both strategic and

21  technical -- strategic with respect to competing rights,

22  technical with respect to the many rules of evidence and

23  procedure that she does not know and that she will have to

24  learn in short order.

25          I will, therefore, permit the defendant to represent

```
 1    herself going forward in this case, but I will not fully
 2    discharge the Federal Public Defender's Office.  I will appoint
 3    them as standby counsel.  I'm appointing them as standby
 4    counsel because they're going to be able to sit in the gallery
 5    behind you, you'll still be representing yourself, but if at
 6    any time you have any questions either about the technical
 7    rules or about the different -- difficult strategic decisions
 8    that we've talked about, you should feel free to turn around
 9    and ask them any questions that you may have or to ask for a
10    recess if you need more time to consult with them.
11           Also, if at any time during the course of the case,
12    either before trial or even during trial, you decide that
13    you've made a very bad decision in deciding to proceed on your
14    own, I will allow you to bring the Federal Public Defender's
15    Office back into the case.  And one of the good things about
16    having them as standby counsel is that they'll have to be here
17    for all of the hearings, they'll be fully apprised of all the
18    things that have transpired in your case, and they won't need
19    any time to catch up, if, in fact, you decide one day to bring
20    them back in.
21           Do you understand that, Ms. Zhang?
22           THE DEFENDANT:  Uhm, most of -- you mean who is going
23    to sit beside me?  I didn't catch the sentence.  I --
24           THE COURT:  Nobody is going to sit beside you.
25           THE DEFENDANT:  Okay.
```

1      THE COURT:  You're going to be sitting there by

2  yourself --

3      THE DEFENDANT:  Okay.

4      THE COURT:  -- at the trial.  Do you understand that?

5      THE DEFENDANT:  Oh, yes, because --

6      THE COURT:  Okay.  You're going to be doing this all

7  by yourself.  Do you understand that?

8      THE DEFENDANT:  Uh, yes.

9      THE COURT:  But what I'm saying is -- and this is not

10  your choice -- I'm going to appoint the Federal Public

11  Defender's Office as what's called standby counsel or standby

12  lawyers.  What that means is, they're going to be sitting

13  behind you in the first row in the gallery, so that if you have

14  any questions or if you change your mind, they can come back in

15  and advise you.  Do you understand that?

16      THE DEFENDANT:  Yes.  I heard what's your decision.

17      THE COURT:  All right.  Is there anything else the

18  government would like me to ask Ms. Zhang on this issue?

19      MR. GARCIA:  No, your Honor.

20      THE COURT:  So, I will discharge partially the public

21  defender's office and ask you to remain on as standby counsel.

22  I'll ask you to attend all hearings and, of course, to be

23  solicitous of Ms. Zhang in the event that she decides to either

24  ask your opinion on anything or ask you to return as her

25  counsel in the case.

1          So, with that, I'll ask you to stand -- or sit in the

2     first row of the gallery, please.

3          MS. MILITELLO:  May I address one issue?

4          THE COURT:  Sure.

5          MS. MILITELLO:  Your Honor asked that we provide her a

6     copy of the evidence book and criminal procedure, which we have

7     no issue doing, but may need a Court order in order for the

8     jail to allow us to do that.

9          THE COURT:  That's no problem.  If you just file a

10    motion, I will grant that.

11         MS. MILITELLO:  Okay.

12         THE COURT:  Thank you.

13         Now, I think we should address the issue of the trial

14    dates.

15         MR. ADLER:  Good luck to you.

16         MR. GARCIA:  Yes.  And, your Honor, and discovery as

17    well.

18         *(Defense counsel moved to the gallery)*

19         THE COURT:  And discovery.

20         What is the status of discovery, Mr. Garcia?

21         MR. GARCIA:  I have provided discovery to defense

22    counsel.  As I understand it, the defendant does not have it.

23         THE COURT:  I'm sorry, but I guess we're going to have

24    to bring you back up in light of that.

25         *(Defense counsel moved to counsel's table)*

1            MS. MILITELLO:  Would the Court like me to explain?

2            THE COURT:  Well, no, I think I fully understand why

3     you haven't provided it to her.  She hasn't wanted to meet with

4     you, is that correct?

5            MS. MILITELLO:  Partially.  We have offered discovery

6     to her, though, and she has not wanted to accept the discovery

7     that we have offered.  And we have a copy of most of it here

8     today in court, and so should she accept it, she, of course,

9     could.

10           There is also digital evidence that I think the

11    government would perhaps need to make arrangements for her to

12    review that we could not print and bring today in court.

13           THE COURT:  Okay.  Ms. Zhang, it is not your choice to

14    accept the discovery in the case.  I'm going to require that

15    you take that discovery back with you into your cell.  Okay?

16           THE DEFENDANT:  Sorry, I didn't catch what -- your

17    dialogues just now.

18           THE COURT:  Sure.

19           THE DEFENDANT:  I mean, I didn't know what

20    happens *(sic)* just now.

21           THE COURT:  I'll explain it.

22           What happens is, the government is required to provide

23    you with what's called discovery in the case.  The discovery in

24    the case includes many things.  It includes, for example, all

25    of the evidence that they intend to present in the case against

1   you.  It includes, also, any of what's called exculpatory

2   information.  Exculpatory information is any evidence that they

3   have in their possession that is helpful to you.  They're

4   required to turn that over to you.

5          It also involves what's called *Giglio* information.

6   *Giglio* information is any information about a witness that the

7   government intends to call that is bad with respect to that

8   witness.  They have to give that to you as well so that you

9   know the bad things about the government witnesses so that you

10  could, if you're allowed, ask about those things and bring

11  those things out in front of the jury.  Do you understand that?

12         THE DEFENDANT:  Do you mean that the government will

13  provide me both goods *(sic)* and bad things simultaneously?

14         THE COURT:  Isn't it an amazing system?  That is

15  exactly what I'm telling you.  The government is providing you

16  both the things that they think are good for them and the

17  things that they think are bad for them.  That's their

18  obligation under the law.  And I'm here to police that

19  obligation to make sure that they follow through on those

20  obligations.  And as I understand it, that information is

21  contained in the paperwork that your lawyer is providing to you

22  now.  Do you understand that?

23         THE DEFENDANT:  You mean they provide me both good and

24  the bad information for them, and I can decide whether I should

25  read it or not?

1          THE COURT:  That is correct.  That will be your own

2     decision.  Again, my strong recommendation is that you should

3     read it, and that if you need help reading it, that even though

4     they're no longer your lawyers, you should allow your former

5     lawyers at the public defender's office to read it for you and

6     explain it to you.

7          But I can't be in your cell and force you to read it,

8     if you don't want to.  What I can do is to require that it be

9     provided to you, and I'm doing that now.  Okay?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  So, the only remaining issue

12     with respect to discovery, it sounds like, is the video or

13     audio files that cannot be printed out, correct?

14          *(Discussion had off the record between counsel)*

15          MR. ADLER:  Yes, Judge, I believe so.

16          Also, I am providing her with a copy of the statutes

17     that apply to her case, with the standard jury instruction for

18     the 1001 charge.  There is no standard for the trespass charge.

19          I'm also providing her -- and this is at the top of

20     what we're giving her -- are defense certified translations of

21     documents and of communications which we believe contained

22     exculpatory information, which we'd very much like for her to

23     review.  And I've actually highlighted the portions of our

24     preparation in that regard, and we would encourage her to

25     review that very carefully.

```
1          THE COURT:  These are very good lawyers.  It sounds
2   like that they've done a lot of very good work already on your
3   behalf.  Did you hear what your former lawyer just explained?
4   Or do you want me to explain it further?
5          THE DEFENDANT:  Sorry, I reject the --
6          THE COURT:  I know you rejected your lawyer.  He's no
7   longer your lawyer.  I'm just explaining to you that he just
8   made some important statements.  Do you want me to explain to
9   you what he just said?  Or did you understand it?
10         THE DEFENDANT:  Uhm, you mean you want to -- sorry,
11  you just -- you just say it.  I didn't catch what you mean.
12         THE COURT:  What your lawyer just explained is that
13  some of the information that the government has given to you
14  that's in that pile of documents is, as I explained to you a
15  moment ago, exculpatory information, that is, what the
16  government or your former lawyers believe to be bad for the
17  government.  That's really important for you to read --
18         THE DEFENDANT:  Yeah.
19         THE COURT:  -- because it could be tremendously
20  helpful to your case.
21         THE DEFENDANT:  Yeah.
22         THE COURT:  And what your lawyer has said is he's had
23  that translated into Chinese.  He's also provided it to you in
24  English, so you can read it in whichever language you want.
25  And he's also highlighted the special portions that he thinks
```

```
 1    are particularly helpful to you.
 2              Do you understand that?
 3              THE DEFENDANT:  Yes.  I know they're hardworking.
 4              THE COURT:  They are hardworking, and they're very
 5    talented.  Do you agree with that as well?
 6              THE DEFENDANT:  Um-hum, yes.
 7              THE COURT:  Okay.
 8              THE DEFENDANT:  But I still insist on my opinion.
 9    Thank you.
10              THE COURT:  I understand that.
11              Every now and again, it's nice to say nice things
12    about people, and I appreciate your candor in saying that.
13              So, the only remaining issue, then, other than
14    those -- and one more issue on the instructions.  Counsel?
15    I'll just ask you, in addition to providing her with the
16    Federal Rules of Criminal Procedure and the Federal Rules of
17    Evidence -- I know you mentioned you provided, I think, only
18    the offense instructions -- I'd appreciate it if you just gave
19    her a set of the pattern -- the latest edition of the pattern
20    jury instructions so that she can have that as well.
21              MS. MILITELLO:  Yes, your Honor.  And I think there
22    may be some additional reports that we don't have printed
23    today, but we can obviously mail them or provide them to her.
24              THE COURT:  So that leaves us with only the question
25    of the non-paper files.
```

1          Mr. Garcia, how do you propose that we provide that to

2     the defendant?  Is there an issue with the marshal's service in

3     that respect?

4          MR. GARCIA:  I'd have to check with the jail wherever

5     she may be and see what kind of facility there is to

6     accommodate her.

7          THE COURT:  I propose one of two alternatives.  One

8     is, if you check with the jail, and they're fine with letting

9     her have those files, then you can just file a notice with the

10    Court of compliance alerting me that the jail represented that

11    they're fine with allowing her to use a jail laptop to review

12    the files in her -- in some facility where she's being held.

13         In the alternative, which I expect, actually, that the

14    jail is not amenable to letting her have that, then what I

15    propose is that we bring everyone here for a status conference,

16    and that we play the videos for Ms. Zhang, or audio, as the

17    case may be.  And I'll just ask you to file a notice with me

18    just to let me know one way or the other.

19         A separate issue is how you're going to be alerting

20    Ms. Zhang of any filings in the case.  I assume that you're

21    going to serve her personally in the jail with all of my orders

22    and all of your filings, but if you have a different idea, I'm

23    open to hearing it.

24         MR. GARCIA:  No.  Just like in any other pro se

25    situation, we get a copy to the defendant.

```
 1            THE COURT:  Okay.  So that brings us to the issue
 2   of -- is that it with respect to discovery?
 3            MR. GARCIA:  I believe so, your Honor.
 4            THE COURT:  So that brings us to the issue of trial
 5   dates.
 6            Ms. Zhang, prior to your lawyers being discharged,
 7   they had filed what I thought was a very good and compelling
 8   motion asking for more time for your trial so that they could
 9   review all of this discovery that we're talking about,
10   including all of the things that are included in there that may
11   be helpful for you, and to use that time to adequately prepare
12   your defense.
13            Again, to give you a little sneak peek, I was going to
14   grant that motion, and if you want to just reraise that motion
15   with me, I'll grant it, to give you as much time as you think
16   you need to prepare for your trial.  Do you understand that?
17            THE DEFENDANT:  Uh, can you -- I beg your pardon, the
18   last sentence?
19            THE COURT:  Yeah.  So, if you want -- well, I'm
20   telling you that I was going to grant your lawyers' motion for
21   more time to give you all as much time as you needed to prepare
22   your defense to the very serious charges that the government
23   has brought against you.
24            If you want, I will give you all the time that you
25   need in order to prepare your defense and to go through the
```

1    documents that have been provided to you.

2              THE DEFENDANT:  I understand.  I catch you.  Thank

3    you.

4              THE COURT:  Okay.  So, what I was going to do is, I

5    was going to give you about two months for the preparation of

6    your case.  Does that sound good?

7              THE DEFENDANT:  Hum, yes.  So, if I make it as one

8    month, can I ask for move forward *(sic)*?  I mean, it's -- you

9    give me maximum two months, and can I --

10             THE COURT:  Do you want three months?  Is that what

11   you're saying?

12             THE DEFENDANT:  No, no, no, no.  I mean, if I find

13   that I can do it in one month, can I ask for just one month

14   if -- if just happening *(sic)*?

15             THE COURT:  You can ask for anything that you want.

16             THE DEFENDANT:  Yes, but now -- I cannot make decision

17   right now.

18             THE COURT:  Okay.  So, that's a fair point.  I'll

19   allow you to come back later and ask me for a different amount

20   of time.  Is that what you want?

21             THE DEFENDANT:  *(No response)*

22             THE COURT:  You want to be able to come back later,

23   and after reviewing this information, tell me you want either

24   more or less time?

25             THE DEFENDANT:  Do you mean that I have to review this

 1   information?

 2          THE COURT:  Yes.

 3          THE DEFENDANT:  Oh, can I not?

 4          THE COURT:  No, you have to review the information.

 5   Now, I'm not going to be in the room with you, so you can

 6   choose to do what you want.  But I strongly --

 7          THE DEFENDANT:  Yeah.

 8          THE COURT:  -- advise you to review the information.

 9          THE DEFENDANT:  Okay.

10          THE COURT:  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  So, are you okay with setting your

13   trial for two months with the understanding that, as I

14   understand what you're asking me, you can come back later and

15   either ask me for more time or less time?

16          THE DEFENDANT:  Oh, yes.

17          THE COURT:  Okay.

18          THE DEFENDANT:  You mean, ah, between two months, I

19   cannot ask you to be less time, right?

20          THE COURT:  You can ask me for anything that you want.

21   I thought you said that you wanted to have more time to make

22   that decision.

23          THE DEFENDANT:  Or I can have less time to make my

24   decision?

25          THE COURT:  Well, how much time -- well, yeah, you

```
 1    don't have to make your decision in two months.  I'm going to
 2    set a trial time now.  Do you understand that?
 3              THE DEFENDANT:  You have to set a -- set a time now?
 4              THE COURT:  I don't have to, but I will.
 5              THE DEFENDANT:  Oh, yes.
 6              THE COURT:  I am going to set a trial time now.  Do
 7    you understand that?
 8              THE DEFENDANT:  You say you don't have to set a trial
 9    time now?
10              THE COURT:  That's correct.  But I will.  I am going
11    to do it now.
12              THE DEFENDANT:  So, you are going to get the time now?
13              THE COURT:  Yes.
14              THE DEFENDANT:  So, you strongly recommend that
15    two months, is what you mean?
16              THE COURT:  I think that two months is probably a good
17    amount of time for you to be able to study the rules of
18    evidence, like we talked about; for you to be able to study the
19    rules of criminal procedure, like we talked about; for you to
20    be able to study the pattern jury instructions, like we talked
21    about; and for you to have enough time to review all of the
22    documents that have been provided to you to pick out all the
23    things that are helpful to you; and for you to review the
24    videos that are going to be provided to you by the government
25    in this case.  So, I think that two months is probably a good
```

1    time.  Do you understand that?

2              THE DEFENDANT:  Yes, I've heard your recommendation of

3    the time.

4              THE COURT:  Okay.

5              THE DEFENDANT:  But I'm not sure about it.  But maybe,

6    yes, you can decide it.  I don't know what I can refuse it or

7    not.  I mean, I can ask for just -- ask -- have a request for

8    less time or more time.

9              THE COURT:  You can.  You can have a request for

10   either less time or more time.

11             THE DEFENDANT:  Yeah.  But I cannot decide it today.

12             THE COURT:  That's okay.  So, what I'm going to do

13   today is I'm going to set your trial for two months.  And then

14   I'm going to allow you to come back and ask me either for less

15   time or for more time.  Okay?

16             THE DEFENDANT:  Okay.

17             THE COURT:  And so, you're going to have to file a

18   motion with me in order to ask me either to give you more time

19   or less time.  Do you understand that?

20             THE DEFENDANT:  Uhm, yes, maybe.

21             THE COURT:  Okay.

22             So, Mr. Garcia, I reviewed your speedy trial report.

23   By your calculation, the elapsed speedy trial time was 28 days,

24   correct?

25             MR. GARCIA:  That's correct, your Honor.

```
 1            THE COURT:  And I guess that speedy trial time would
 2    be pending as of today, assuming that I rule on -- because I've
 3    ruled on these motions today.
 4            MR. GARCIA:  Right.  If the Court grants the
 5    two months' continuance, it will be tolled.
 6            THE COURT:  Well, it would if I find that the ends of
 7    justice --
 8            MR. GARCIA:  Correct.
 9            THE COURT:  Right.  But my point is that as of right
10    now, without any additional tolling, we are 42 days from the
11    expiration of the speedy trial time, which, by my calculation,
12    would be July the 23rd.
13            MR. GARCIA:  That's correct.  Forty-two days.  I
14    haven't actually looked at the calendar, but it is 42 days.
15            THE COURT:  Okay.  But I do find that the ends of
16    justice outweigh any interests of the defendant or the public
17    in a speedy trial.  I find that because the defendant has
18    decided to represent herself in this case, I find it because
19    the defendant is not a lawyer, and she speaks English, but is
20    more fluent in Mandarin, so it will take her extra time to
21    review all of the rules of evidence, the rules of criminal
22    procedure, the pattern jury instructions that apply, the
23    guideline range that might apply, if she's convicted, and also,
24    of course, all of the seemingly voluminous discovery that's
25    going to be provided to her.
```

1          I also find that there would be a miscarriage of

2     justice if I set it at an earlier time, because we also have to

3     allot special amounts of time, I think, for her to be able to

4     be brought here and for you to be able to play for her those

5     video or audio files, whatever it is, that cannot be printed

6     out for her and provided to her in her cell.

7          So, under 18, United States Code, Section 3161(h)(7),

8     (i) through (iv), I find that the ends of the justice outweigh

9     the best interests of the defendant and the public in a speedy

10    trial, to give the defendant as much time as possible to

11    prepare an adequate defense to the very serious charges that

12    have been presented in this case, in particular, given the fact

13    that she's representing herself, that she's never been a lawyer

14    before, that she has no familiarity with American law, and that

15    English is at least her second language, and maybe more.

16          So, for those reasons, I'm going to continue this case

17    until at the very least August.

18          ToniAnn, what does the trial calendar look like?

19          ROOM CLERK:  Calendar call August 13th at 1:30 p.m.,

20    jury trial, August 19th at 9:30 a.m.

21          THE COURT:  Does that work for you, Mr. Garcia?

22          MR. GARCIA:  Yes, your Honor.

23          THE COURT:  Ms. Zhang, did you hear the dates that

24    were read out?

25          THE DEFENDANT:  Oh, yes, I heard it.

```
 1          THE COURT:  So, if you decide that you want a
 2  different amount of time, you can come back and file a motion
 3  when you're ready to do so.  Okay?
 4          THE DEFENDANT:  Okay.  Thank you.
 5          I -- I need to work it out, the dates, yes, before I
 6  ask.  Sorry.  Thank you.
 7          THE COURT:  Okay.  And if you do file a motion, I will
 8  consider all of your arguments in that motion.  Okay?
 9          THE DEFENDANT:  Okay.
10          THE COURT:  Is there anything else from the
11  government?
12          MR. GARCIA:  No, your Honor.  I will confer with the
13  defendant concerning discovery and other trial-related issues.
14          THE COURT:  Anything else from the defendant?
15          THE DEFENDANT:  (No response)
16          THE COURT:  All right.  Thank you all very much.
17          MR. GARCIA:  Thank you, your Honor.
18          (Proceedings concluded at 11:17 a.m.)
19                    -  -  -  -  -
20                C E R T I F I C A T E
21      I hereby certify that pursuant to Section 753,
    Title 28, United States Code, the foregoing is a true and
22  correct transcript from the record of proceedings in the
    above-entitled matter.
23
24  _____     6-20-2019_____
    Francine C. Salopek, RMR-CRR            Date
25  Official Court Reporter
```

MR. ADLER: [2]  43/14 46/14
MR. GARCIA: [14]
MS. MILITELLO: [12]
ROOM CLERK: [2]  3/3 56/18
THE COURT REPORTER: [1]  3/12
THE COURT: [216]
THE DEFENDANT: [186]
THE INTERPRETER: [1]  4/19

**$**
$1,000 [1]  16/18
$100 [1]  16/24
$25 [1]  16/19
$250,000 [1]  16/23

**1**
1001 [1]  46/18
10:03 [2]  1/8 3/1
11 [3]  1/8 3/1 22/3
11:17 [1]  57/18
12 [3]  22/3 23/14 23/14
12 months [1]  20/16 20/22
13 [1]  22/3
13th [1]  56/19
14 [1]  22/3
15 [1]  22/3
16 [1]  22/3
18 [1]  56/7
19-80056-CR-RKA [1]  1/4
19th [1]  56/20
1:30 p.m [1]  56/19

**2**
20 hours [2]  6/7 40/10
2019 [5]  1/8 3/1 15/1 15/13 57/24
205F [1]  2/11
23rd [1]  55/12
28 [1]  57/21
28 days [1]  54/23
299 [1]  2/11

**3**
30th [2]  15/1 15/13
3161 [1]  56/7
33301 [1]  2/11
33401 [2]  2/4 2/8

**4**
40 [1]  21/15
400 [1]  2/4
42 days [2]  55/10 55/14
45 [1]  21/15
450 [1]  2/7

**5**
500 [2]  2/3 2/8
5657 [1]  2/12

**6**
6-20-2019 [1]  57/24

**7**
753 [1]  57/21

**769-5657 [1]**  2/12

**9**
954 [1]  2/12
9:30 a.m [1]  56/20

**A**
a.m [4]  1/8 3/1 56/20 57/18
abide [1]  37/7
above [4]  18/17 18/18 19/17 57/22
above-entitled [1]  57/22
accept [3]  44/6 44/8 44/14
accommodate [1]  49/6
accurate [1]  32/18
addition [3]  17/6 29/16 48/15
address [2]  43/3 43/13
addressing [1]  9/4
adequate [1]  56/11
adequately [1]  50/11
Adler [2]  2/5 3/11
admit [1]  16/3 35/17
admitted [2]  35/4 37/15
admitting [1]  35/15
advance [1]  29/9
advice [3]  35/22 35/23 39/11
advise [3]  38/1 42/15 52/8
advised [2]  5/4 5/14
advisory [4]  18/12 18/14 20/17 20/23
afford [1]  38/15
agency [1]  15/16
agent [1]  15/20
agree [2]  35/10 48/5
ah [5]  13/4 22/11 23/18 30/12 52/18
alerting [2]  49/10 49/19
allot [1]  56/3
allow [7]  22/18 35/16 41/14 43/8 46/4
 51/19 54/14
allowed [3]  22/25 27/4 45/10
allowing [1]  49/11
alternative [1]  49/13
alternatives [1]  49/7
although [2]  5/4 24/6
Altman [1]  1/17
amazing [1]  45/14
amenable [1]  49/14
AMERICA [2]  1/6 3/5
America vs. Yujing [1]  3/5
American [6]  12/17 12/19 12/24
 13/12 37/8 56/14
amount [4]  40/8 51/19 53/17 57/2
amounts [1]  56/3
answer [3]  9/7 25/6 25/10
appearances [2]  2/1 3/6
applies [2]  31/10 31/14
apply [11]  18/22 20/6 31/12 32/20
 35/14 35/21 36/18 37/8 46/17 55/22
 55/23
appoint [4]  38/16 39/7 41/2 42/10
appointing [1]  41/3
appreciate [2]  48/12 48/18
apprised [1]  41/17
approaching [1]  40/10
argue [3]  19/19 19/20 33/21
arguments [6]  32/24 33/1 33/5 33/11

33/17 57/8
arrangements [1]  44/11
arrayed [2]  22/1 22/2
arrested [1]  12/21
assessment [2]  16/19 16/23
assign [1]  18/8
assistance [1]  38/14
Assistant [2]  2/2 2/6
assume [2]  19/6 49/20
assuming [1]  55/2
assurances [1]  40/3
attempted [1]  15/3
attend [3]  15/22 40/20 42/22
attorney [2]  2/2 9/21
Attorney's [1]  2/3
attorney-client [1]  9/21
audio [4]  8/11 46/13 49/16 56/5
August [3]  56/17 56/19 56/20
August 13th [1]  56/19
August 19th [1]  56/20
Australian [2]  2/3 2/7
authority [1]  15/5
authorized [1]  15/21
Avenue [2]  2/3 2/7
aware [2]  5/10 5/13
axis [1]  18/11

**B**
balanced [1]  28/3
Beach [4]  2/4 2/8 15/2 15/13
beforehand [1]  33/13
beg [3]  9/8 14/13 50/17
begin [2]  25/5 33/18
begun [1]  26/25
behind [1]  41/5 42/13
believe [7]  5/6 5/9 6/3 46/15 46/21
 47/16 50/3
below [2]  18/16 19/16
benefitting [1]  8/12
Blvd [1]  2/11
book [4]  19/24 20/2 31/9 43/6
born [1]  23/6
branch [1]  15/16
Broward [1]  2/11
building [1]  15/4
buildings [2]  15/1 20/4
burden [5]  25/1 25/2 25/3 25/11 33/7

**C**
calculate [3]  12/25 13/2 13/7
calculation [3]  40/9 54/23 55/11
calendar [5]  1/16 11/7 55/14 56/18
 56/19
call [12]
called [14]
Calling [1]  3/4
candor [1]  48/12
carefully [1]  46/25
carry [1]  16/11
catch [9]  9/10 27/24 30/12 37/12
 41/19 41/23 44/16 47/11 51/2
category [3]  18/10 20/13 20/14
category I [1]  20/13
cause [1]  23/1

**C**

cell [3]  44/15 46/7 56/6
certified [3]  3/25 4/1 46/20
certify [1]  57/21
chair [2]  21/20 21/21
chairs [2]  21/23 23/15
character [1]  10/18
charge [9]  15/7 16/1 20/4 31/5 31/17
 32/23 39/7 46/18 46/18
charged [4]  14/4 15/11 20/3 20/5
charges [12]
check [2]  49/4 49/8
Chinese [5]  3/22 3/25 12/13 12/15
 47/23
choice [7]  24/20 25/12 28/2 29/17
 29/18 42/10 44/13
choices [1]  34/25
choose [4]  3/24 28/16 35/16 52/6
chooses [1]  29/11
citizens [1]  14/8
clean [2]  25/22 26/19
client [1]  9/21
closest [1]  21/20
closing [3]  29/22 32/24 33/17
Club [2]  15/5 15/21
Code [2]  56/7 57/21
coerce [1]  39/23
commission [2]  18/6 18/7
communication [2]  9/25 10/1
communications [2]  9/20 46/21
community [2]  21/16 23/14
compelling [1]  50/7
competency [2]  5/20 40/12
competent [3]  5/7 10/23 11/2
competing [1]  40/21
compliance [1]  49/10
complicated [2]  24/25 27/1
comprise [1]  6/9
compute [1]  19/10
computed [1]  17/21
computer [1]  1/25
concern [1]  9/4
concerning [1]  57/13
concerns [2]  5/2 5/24
concluded [1]  57/18
conduct [3]  4/16 5/20 32/13
conducted [1]  36/17
confer [2]  31/13 57/12
conference [4]  31/5 31/17 32/24
 49/15
consecutively [2]  17/9 17/17
consequences [2]  11/4 40/19
Constitution [2]  9/13 24/7
constitutional [11]  24/15 24/16 27/1
 28/3 28/6 28/6 28/8 28/8 28/12 29/17
 32/8
consult [1]  41/10
contained [7]  15/7 16/1 16/11 30/25
 34/7 45/21 46/21
contains [2]  14/12 14/19
continuance [1]  55/5
contradict [1]  29/11
conversation [3]  9/5 9/19 9/22
conversations [1]  9/6

convicted [6]  16/14 16/16 16/20 19/6
 20/12 55/23
copy [5]  14/14 43/6 44/7 46/16 49/25
counsel [20]
counsel's [1]  43/25
count [23]
Count 1 [12]
Count 2 [9]  15/11 15/12 16/1 16/20
 17/6 17/8 17/13 17/14 20/5
country [2]  8/20 23/6
counts [4]  14/12 16/11 17/1 18/20
Counts 1 [3]  16/11 17/1 18/20
County [2]  15/2 15/13
court [21]
courtroom [7]  3/2 7/16 8/14 8/15 9/3
 9/24 21/20
CR [1]  1/4
credibility [1]  32/9
criminal [26]
cross [5]  25/21 27/11 27/11 27/14
 27/15
cross-examination [1]  25/21
cross-examine [4]  27/11 27/11 27/14
 27/15
CRR [2]  2/9 57/24
culminate [1]  33/23
cut [2]  23/20 23/20

**D**

date [2]  11/8 57/24
dates [4]  43/14 50/5 56/23 57/5
deadlines [1]  36/18
decide [24]
decided [3]  11/1 39/4 55/18
decides [3]  4/17 26/24 42/23
decision [25]
decisions [3]  21/4 24/25 41/7
defend [2]  38/2 38/3
defendant [16]
defendants [1]  23/3
defender [1]  5/16
defender's [6]  2/7 41/2 41/14 42/11
 42/21 46/5
Defenders [1]  2/6
defense [14]
deliberations [4]  33/18 33/19 33/23
 35/5
deny [1]  5/21
Department [2]  15/15 15/19
depend [1]  12/11
depending [1]  33/14
deputy [2]  8/14 21/20
described [2]  17/7 36/20
deserve [2]  19/20 19/22
deserves [1]  19/21
desire [1]  5/17
determine [2]  22/16 22/20
determining [1]  19/8
dialogues [1]  44/17
difference [1]  36/5
difficult [11]  21/4 24/17 26/3 26/14
 27/7 27/12 28/2 29/8 29/16 29/18
 41/7
difficulties [1]  39/15

digital [1]  44/10
direct [1]  25/7
directly [2]  28/5 28/13
disagree [1]  31/14
disagreement [1]  31/15
discharge [2]  41/2 42/20
discharged [1]  50/6
discovery [15]
discuss [1]  33/20
discussed [1]  18/19
Discussion [3]  6/6 6/10 46/14
discussions [1]  9/2
DISTRICT [6]  1/1 1/2 1/8 2/10 15/2
 15/14
DIVISION [1]  1/3
documents [4]  46/21 47/14 51/1
 53/22
dozen [1]  6/12

**E**

ease [1]  5/3
edition [5]  36/6 36/8 36/10 36/12
 48/19
effective [1]  38/14
eight [1]  22/2
elapsed [1]  54/23
encourage [1]  46/24
English [17]
enter [2]  15/3 15/3
entirely [2]  33/23 39/21
entitled [1]  57/22
entry [2]  14/25 20/4
equipment [2]  3/16 3/16
evaluation [2]  5/20 6/3
event [3]  15/23 15/24 42/23
everybody [2]  9/23 10/2
everyone [1]  49/15
evidence [36]
examination [2]  25/7 25/21
examine [2]  27/11 27/11 27/14 27/15
exception [2]  8/7 8/25
excess [1]  6/7
exculpatory [4]  45/1 45/2 46/22
 47/15
excuse [2]  3/13 6/1
executive [1]  15/16
expect [1]  49/13
expiration [1]  55/11
explain [8]  18/2 26/8 37/13 44/1
 44/21 46/6 47/4 47/8
explained [3]  47/3 47/12 47/14
explaining [2]  18/24 47/7
explanation [1]  36/6
extra [1]  55/20
extremely [1]  40/14

**F**

face [2]  19/2 21/4
faced [2]  27/7 28/1
facility [2]  49/5 49/12
facing [2]  17/1 38/5
fact [4]  15/23 40/12 41/19 56/12
facts [6]  23/16 30/7 30/9 30/20 30/20
 32/20

## F

false [3]  15/12 15/18 20/5
familiarity [1]  56/14
family [1]  5/8
fancy [1]  21/17
father [1]  5/9
federal [20]
fee [2]  16/19 16/23
fictitious [1]  15/18
file [6]  43/9 49/9 49/17 54/17 57/2
 57/7
filed [2]  4/23 50/7
files [5]  46/13 48/25 49/9 49/12 56/5
filings [2]  49/20 49/22
fill [1]  32/11
final [2]  29/3 32/25
fine [3]  16/18 49/8 49/11
fines [1]  16/23
finished [1]  33/17
fire [3]  10/15 39/24 40/4
five years [3]  16/21 17/14 17/16
FL [1]  2/8
FLORIDA [6]  1/2 1/7 2/4 2/11 15/2
 15/14
fluent [1]  55/20
force [2]  39/23 46/7
foregoing [1]  57/21
foreign [1]  23/6
form [2]  32/11 32/12
former [3]  46/4 47/3 47/16
FORT [3]  1/3 1/7 2/11
Forty [1]  55/13
Forty-two [1]  55/13
four months [1]  20/21
Francine [2]  2/9 57/24
frankly [2]  8/21 8/22
fraudulent [1]  15/18
free [3]  38/16 39/7 41/8
freely [1]  40/18
friendship [1]  15/23
front [3]  14/15 21/21 45/11

## G

gallery [4]  41/4 42/13 43/2 43/18
Garcia [6]  2/2 3/7 43/20 49/1 54/22
 56/21
general [1]  37/17
gets [1]  25/22
Giglio [2]  45/5 45/6
glad [1]  35/3
gonna [4]  21/15 21/20 22/8 22/8
goods [1]  45/13
govern [5]  35/4 36/16 36/17 37/14
 37/16
government [45]
government's [5]  25/1 28/21 28/23
 31/15 37/2
grand [1]  14/7
grant [5]  35/11 43/10 50/14 50/15
 50/20
granted [1]  5/20
grants [1]  55/4
gray [1]  21/21
ground [1]  15/25

grounds [4]  15/1 15/4 15/5 15/22
group [1]  14/7
guarantees [1]  40/3
guide [1]  20/23
guideline [14]
guidelines [14]
guilt [1]  14/8
guilty [19]

## H

half [1]  6/11
hand [2]  20/8 26/17
happy [1]  4/1
hardworking [2]  48/3 48/4
health [1]  5/3
hear [5]  3/18 4/24 8/22 47/3 56/23
heard [14]
hearing [8]  4/16 4/23 7/9 8/24 10/3
 10/21 11/13 49/23
hearings [2]  41/17 42/22
heart [1]  39/6
help [10]  4/1 4/11 19/10 21/3 28/15
 35/6 37/9 37/21 37/22 46/3
helpful [6]  32/19 45/3 47/20 48/1
 50/11 53/23
hereby [1]  57/21
high [1]  18/14
highest [2]  18/24 19/1
highlighted [2]  46/23 47/25
hints [1]  37/22
history [6]  5/9 18/10 20/9 20/10
 20/13 20/14
hold [3]  3/25 27/5 28/10
Homeland [2]  15/15 15/19
Honor [13]
Honorable [1]  1/17
hopefully [1]  23/13
hopes [1]  28/22
hours [9]  5/1 6/7 13/3 13/11 13/13
 13/14 13/14 40/10 40/10
huh [1]  7/14
hum [18]
hum-hum [5]  10/8 21/22 21/25 22/5
 22/15
hurtful [1]  25/24 26/15

## I

I'd [2]  48/18 49/4
I'll [12]
I'm [39]
I've [11]  4/22 5/13 17/7 21/12 36/4
 36/5 36/20 36/24 46/23 54/2 55/2
idea [1]  49/22
ill [1]  5/4
ill-advised [1]  5/4
illegal [1]  35/8
illness [1]  5/10
impartial [5]  22/9 22/17 22/20 23/8
 23/15
impose [6]  16/16 16/20 16/23 18/15
 18/16 18/17
imprisonment [3]  16/17 16/21 17/13
inadmissible [1]  35/7
included [1]  50/10

includes [3]  44/24 44/24 45/1
including [2]  40/19 50/10
indeed [1]  37/18
indictment [8]  14/4 14/6 14/11 14/15
 14/19 31/1 32/7 34/7
individual [1]  20/8
information [14]
innocence [1]  14/9
inquiry [2]  5/11 11/3
insist [2]  11/22 48/8
instruct [2]  30/10 30/17
instruction [2]  31/14 46/17
instructions [29]
intelligent [1]  40/13
intelligently [1]  40/7
intend [1]  44/25
intends [1]  45/7
interest [1]  39/5
interests [2]  55/16 56/9
interpreter [2]  4/1 8/17
introduce [1]  35/7
issue [15]
issues [2]  8/16 57/13
iv [1]  56/8

## J

jail [7]  43/8 49/4 49/8 49/10 49/11
 49/14 49/21
job [1]  30/24
judge [8]  1/18 3/2 7/13 27/5 30/6
 30/15 30/16 46/15
judges [5]  23/15 30/5 30/6 30/13
 30/20
judging [3]  30/15 30/19 32/9
July [1]  55/12
June [2]  1/8 3/1
jurisdiction [1]  15/14
juror [5]  21/19 23/2 23/2 23/4 23/7
jurors [20]
jury [32]
justice [4]  55/7 55/16 56/2 56/8

## K

kick [1]  9/23
kinds [1]  30/5
knowingly [3]  15/3 15/17 40/6
Kristy [2]  2/6 3/10

## L

Lago [3]  15/5 15/21 15/25
laid [1]  37/3
language [2]  47/24 56/15
laptop [1]  49/11
latest [3]  36/8 36/9 48/19
LAUDERDALE [3]  1/3 1/7 2/11
law [31]
lawful [1]  15/5
laws [1]  12/12
lawyer [35]
lawyers [18]
lawyers' [1]  50/20
learn [2]  35/25 40/24
leave [1]  22/22
leaves [1]  48/24

**L**

**length [1]** 5/1
**letting [2]** 49/8 49/14
**level 1 [1]** 20/11
**light [3]** 39/12 39/14 43/24
**limited [3]** 9/4 9/17 9/24
**lined [1]** 21/23
**lines [1]** 36/18
**list [1]** 7/7
**listen [1]** 9/14
**logistical [1]** 11/9
**lowest [1]** 20/10
**luck [1]** 43/15

**M**

**mail [1]** 48/23
**Mandarin [1]** 55/20
**mandatory [1]** 20/18
**map [1]** 18/11
**Mar [3]** 15/5 15/21 15/25
**Mar-a-Lago [3]** 15/5 15/21 15/25
**March [2]** 15/1 15/13
**March 30th [2]** 15/1 15/13
**marshal's [1]** 49/2
**materially [1]** 15/18
**matter [3]** 5/12 15/14 57/22
**maximum [9]** 16/16 16/21 16/25
 17/13 19/2 19/7 20/18 20/19 51/9
**maximums [1]** 18/19
**mean [32]**
**meaning [2]** 10/17 18/24
**means [8]** 23/18 26/24 27/15 30/16
 31/5 36/17 38/23 42/12
**mechanical [1]** 1/24
**meet [3]** 5/1 7/17 44/3
**meeting [7]** 5/2 5/24 6/2 7/1 7/2 7/7
 8/3
**meetings [1]** 6/8
**members [1]** 21/16
**mental [2]** 5/3 5/10
**microphone [2]** 6/21 16/8
**middle [2]** 26/10 26/13
**Militello [2]** 2/6 3/11
**minutes [1]** 13/12
**miscarriage [1]** 56/1
**misremembering [1]** 30/23
**moment [2]** 4/24 47/15
**month [3]** 51/8 51/13 51/13
**months [22]**
**months' [1]** 55/5
**moot [1]** 5/21
**morning [6]** 3/3 3/7 3/9 3/10 3/12
 3/14
**motion [12]**
**motions [1]** 55/3
**move [1]** 51/8
**moved [3]** 11/6 43/18 43/25
**Mr. [4]** 43/20 49/1 54/22 56/21
**Mr. Garcia [4]** 43/20 49/1 54/22
 56/21
**Ms. [16]**
**Ms. Zhang [16]**

**N**

**name [1]** 7/7
**names [1]** 7/1
**Nations [1]** 15/23
**necessary [1]** 6/3
**nice [3]** 7/17 48/11 48/11
**nine [1]** 22/2
**nobody [4]** 7/24 7/25 13/9 41/24
**non [1]** 48/25
**non-paper [1]** 48/25
**notice [3]** 4/22 49/9 49/17
**number [4]** 3/4 11/8 21/19 22/25
**Number 1 [1]** 21/19
**Number 19-80056-Criminal [1]** 3/4

**O**

**object [1]** 35/10
**objection [2]** 35/11 35/11
**obligation [2]** 45/18 45/19
**obligations [1]** 45/20
**offense [6]** 18/9 20/3 20/3 20/7 20/11
 48/18
**office [8]** 2/3 2/7 5/16 41/2 41/15
 42/11 42/21 46/5
**officer [1]** 23/5
**officers [1]** 23/4
**Official [2]** 2/10 57/25
**Oh [16]**
**open [1]** 49/23
**opening [7]** 24/3 24/4 24/5 24/8
 24/18 24/21 37/1
**opinion [6]** 11/16 11/22 38/2 38/11
 42/24 48/8
**opportunity [8]** 4/25 25/9 26/18
 28/20 29/3 32/25 33/19 34/19
**opposed [1]** 28/5
**opposite [2]** 28/13 29/17
**order [10]** 8/22 9/15 31/4 39/24 40/3
 40/24 43/7 43/7 50/25 54/18
**orders [1]** 49/21
**organizational [1]** 8/15
**outweigh [2]** 55/16 56/8

**P**

**p.m [1]** 56/19
**PA [1]** 3/13
**Palm [4]** 2/4 2/8 15/2 15/13
**panel [2]** 21/16 23/7
**paper [1]** 48/25
**paperwork [1]** 45/21
**pardon [3]** 9/9 14/13 50/17
**part [1]** 29/21
**partially [2]** 42/20 44/5
**parties [1]** 33/16
**passed [1]** 18/6
**pattern [6]** 31/9 31/11 48/19 48/19
 53/20 55/22
**pay [1]** 14/23
**peek [1]** 50/13
**penalties [5]** 16/12 17/1 19/2 38/4
 39/13
**penalty [1]** 17/6
**pending [1]** 55/2
**people [8]** 7/22 8/19 21/15 21/17

22/8 22/13 23/14 48/12
**perform [1]** 5/11
**perhaps [2]** 5/4 44/11
**permissible [1]** 30/17
**permit [1]** 40/25
**permitted [2]** 20/19 37/18
**persistent [1]** 5/17
**person [8]** 6/25 7/7 7/23 8/8 23/6
 23/7 23/21 40/15
**personally [1]** 49/21
**persons [1]** 7/6
**phone [1]** 8/11
**phrase [1]** 4/18
**pick [3]** 22/24 23/18 53/22
**picked [1]** 24/1
**piece [1]** 35/12
**pieces [1]** 35/7
**pile [1]** 47/14
**pitfalls [3]** 11/4 39/15 40/19
**Plaintiff [1]** 1/7
**play [3]** 30/14 49/16 56/4
**plus [2]** 16/18 16/23
**point [8]** 4/17 11/6 11/13 26/9 26/24
 27/6 51/18 55/9
**pointed [1]** 35/3
**points [1]** 20/10
**police [3]** 23/3 23/5 45/18
**portions [2]** 46/23 47/25
**position [5]** 5/3 24/17 26/3 29/8
 38/11
**possession [1]** 45/3
**prefer [6]** 3/23 3/24 4/4 4/5 33/13
 33/14
**preparation [2]** 46/24 51/5
**prepare [5]** 50/11 50/16 50/21 50/25
 56/11
**present [16]**
**presented [2]** 30/21 56/12
**presenting [1]** 26/23
**prevent [3]** 26/1 35/11 35/15
**print [1]** 44/12
**printed [3]** 46/13 48/22 56/5
**prison [2]** 17/16 17/18
**private [9]** 5/13 9/1 9/6 9/19 9/25
 10/1 33/23 39/3 39/6
**privileged [1]** 9/21
**pro [3]** 5/18 6/1 49/24
**pro se [3]** 5/18 6/1 49/24
**problem [3]** 26/7 39/2 43/9
**procedure [15]**
**proceed [14]**
**proceeding [1]** 11/4
**proceedings [10]** 1/24 8/9 8/21 8/23
 9/13 9/14 9/16 13/21 57/18 57/22
**process [2]** 23/13 37/16
**produced [1]** 1/25
**promises [1]** 40/2
**promotion [1]** 38/14
**promulgated [1]** 18/6
**properly [1]** 3/16
**propose [4]** 31/11 49/1 49/7 49/15
**proposed [1]** 31/7
**prosecutor [1]** 8/18
**prove [3]** 25/2 25/3 33/7

**P**

**provide [7]** 8/10 43/5 44/22 45/13
45/23 48/23 49/1
**provided [13]**
**providing [5]** 45/15 45/21 46/16
46/19 48/15
**public [15]**
**pursuant [2]** 17/21 57/21

**Q**

**question [5]** 9/7 11/12 11/19 39/9
48/24
**questions [25]**

**R**

**range [12]**
**rational [1]** 40/15
**rationally [1]** 5/5
**read [16]**
**reading [1]** 46/3
**ready [1]** 57/3
**reasons [3]** 25/16 25/16 56/16
**rebut [1]** 29/11
**rebuttal [3]** 29/3 29/12 29/22
**recess [1]** 41/10
**recommend [1]** 53/14
**recommendation [2]** 46/2 54/2
**record [5]** 3/6 6/6 6/10 46/14 57/22
**recorded [1]** 1/24
**redirect [1]** 26/2
**refuse [1]** 54/6
**reject [1]** 47/5
**rejected [1]** 47/6
**release [2]** 16/18 16/22
**remain [4]** 15/3 15/4 28/9 42/21
**remaining [2]** 46/11 48/13
**remember [2]** 7/19 7/24
**remembering [1]** 30/23
**report [1]** 54/22
**reporter [5]** 2/9 2/10 7/15 9/15 57/25
**reports [1]** 48/22
**represent [13]**
**representation [3]** 6/5 15/19 39/16
**representations [1]** 40/20
**representative [1]** 24/11
**represented [6]** 13/16 13/25 38/7
38/8 39/17 49/10
**representing [3]** 39/15 41/5 56/13
**request [2]** 54/7 54/9
**required [4]** 37/7 37/17 44/22 45/4
**reraise [1]** 50/14
**response [2]** 51/21 57/15
**rest [3]** 10/2 26/24 33/8
**rested [1]** 29/5
**restricted [3]** 14/25 15/4 20/4
**result [2]** 5/2 33/22
**return [1]** 42/24
**returned [1]** 14/7
**review [12]**
**reviewed [2]** 4/22 54/22
**reviewing [1]** 51/23
**rights [5]** 28/3 28/13 29/18 32/8
40/21
**RKA [1]** 1/4

**RMR [2]** 2/9 57/24
**RMR-CRR [1]** 57/24
**Robert [2]** 2/5 3/11
**Rolando [2]** 2/2 3/7
**role [1]** 30/19
**roles [1]** 30/14
**room [5]** 2/11 3/18 8/19 33/18 52/5
**row [3]** 22/7 42/13 43/2
**Roy [1]** 1/17
**rule [2]** 14/8 55/2
**ruled [1]** 55/3
**rules [29]**
**runs [1]** 8/14

**S**

**Salopek [2]** 2/9 57/24
**scheduled [1]** 15/24
**scheduling [1]** 8/15
**score [2]** 18/9 18/9
**scores [1]** 18/11
**se [3]** 5/18 6/1 49/24
**seal [2]** 9/3 9/23
**second [4]** 3/25 11/1 33/7 56/15
**secret [1]** 9/21 15/15 15/20
**Section [2]** 56/7 57/21
**Section 3161 [1]** 56/7
**secure [1]** 7/3
**security [3]** 7/5 15/15 15/19
**selected [2]** 21/18 36/25
**selecting [1]** 21/11
**selection [1]** 36/21
**self [2]** 39/16 40/20
**self-representation [1]** 39/16
**self-representations [1]** 40/20
**sense [10]** 10/4 11/10 22/4 23/23
26/20 27/13 32/2 32/14 35/24 35/25
**sentence [14]**
**sentenced [3]** 17/12 18/25 19/2
**sentences [2]** 17/8 31/24
**sentencing [13]**
**serious [4]** 38/4 39/12 50/22 56/11
**serve [3]** 17/15 17/17 49/21
**service [4]** 4/18 15/16 15/20 49/2
**services [2]** 5/15 5/15
**setting [1]** 52/12
**seven [2]** 21/23 22/2
**short [1]** 40/24
**shown [1]** 37/15
**sic [15]**
**side [1]** 24/21
**sides [1]** 30/21
**silent [1]** 28/9
**simultaneous [1]** 8/11
**simultaneously [3]** 8/5 17/9 45/13
**situation [2]** 9/17 49/25
**six months [3]** 19/8 19/22 20/21
**six years [1]** 17/18
**small [1]** 3/18
**sneak [1]** 50/13
**solicitous [1]** 42/23
**sound [1]** 51/6
**sounds [3]** 20/9 46/12 47/1
**South [2]** 2/3 2/7
**SOUTHERN [1]** 1/2 15/2 15/13

**special [4]** 16/19 16/23 47/25 56/3
**specific [1]** 31/18
**speedy [6]** 54/22 54/23 55/1 55/11
55/17 56/9
**spend [1]** 12/23
**spent [4]** 6/4 13/11 40/9 40/11
**spoke [1]** 5/8
**spoken [1]** 8/8
**stand [6]** 6/22 24/18 24/21 25/5 35/9
43/1
**standard [2]** 46/17 46/18
**standby [6]** 41/3 41/3 41/16 42/11
42/11 42/21
**starting [1]** 29/9
**state [1]** 3/6
**statement [7]** 15/18 20/5 24/4 24/6
24/8 24/18 24/22
**statements [4]** 15/12 24/3 37/1 47/8
**STATES [18]**
**status [2]** 43/20 49/15
**statutes [1]** 46/16
**statutory [1]** 18/19
**stenography [1]** 1/24
**step [2]** 37/9 37/21
**stopped [1]** 10/1
**story [1]** 24/21
**strategic [12]**
**strong [1]** 46/2
**strongly [3]** 38/9 52/6 53/14
**study [10]** 12/8 12/15 12/19 34/19
34/20 35/13 35/20 53/17 53/18 53/20
**studying [2]** 12/23 13/12
**suffer [1]** 39/13
**suggestion [1]** 39/8
**Suite [2]** 2/4 2/8
**supervised [2]** 16/18 16/22
**sustain [1]** 35/10
**swear [1]** 24/2
**system [1]** 45/14

**T**

**table [1]** 43/25
**take [9]** 5/19 5/20 20/8 20/11 20/13
33/20 35/22 44/15 55/20
**taken [2]** 34/19 36/12
**talented [1]** 48/5
**talk [4]** 6/2 7/22 10/7 24/11
**talked [8]** 17/25 19/2 36/3 36/25 41/8
53/18 53/19 53/20
**talking [3]** 10/1 19/23 50/9
**technical [7]** 21/3 37/7 37/14 37/18
40/21 40/22 41/6
**tell [12]**
**telling [6]** 19/24 20/16 30/22 33/24
45/15 50/20
**ten months [3]** 20/16 20/20 20/22
**term [3]** 16/16 16/21 17/13
**terms [1]** 30/15
**testify [8]** 24/16 27/2 27/8 27/9 28/7
28/9 28/19 34/25
**thank [20]**
**think [26]**
**thinks [1]** 47/25
**thought [2]** 50/7 52/21

## T

**threaten [1]**  39/23
**three months [3]**  19/22 20/21 51/10
**three years [1]**  16/22
**time [61]**
**Title [1]**  57/21
**tolled [1]**  55/5
**tolling [1]**  55/10
**ToniAnn [1]**  56/18
**top [1]**  46/19
**total [2]**  17/16 17/17
**tough [1]**  27/12
**towards [1]**  34/5
**trained [2]**  28/15 38/2
**transcript [6]**  1/16 1/24 8/23 9/15
  9/24 57/22
**translate [2]**  4/3 4/10
**translated [1]**  47/23
**translation [4]**  3/15 4/17 8/8 8/11
**translations [1]**  46/20
**transpired [1]**  41/18
**tremendously [1]**  47/19
**trespass [1]**  46/18
**trial [39]**
**trial-related [1]**  57/13
**trials [3]**  21/4 30/5 37/9
**tries [1]**  35/7
**true [2]**  35/2 57/21
**trust [2]**  23/5 23/6
**truth [2]**  15/23 30/22
**TUESDAY [1]**  3/1
**two hours [1]**  40/10
**two months [9]**  51/5 51/9 52/13
  52/18 53/1 53/15 53/16 53/25 54/13
**two months' [1]**  55/5
**Typically [1]**  24/5

## U

**U.S [1]**  2/2
**Uh [17]**
**uhm [11]**  3/17 8/2 12/7 12/22 19/12
  24/10 24/10 27/23 41/22 47/10 54/20
**ultimately [3]**  14/8 30/24 31/17
**Um [4]**  10/5 19/18 28/4 48/6
**Um-hum [4]**  10/5 19/18 28/4 48/6
**Un [1]**  7/14
**Un-huh [1]**  7/14
**understand [83]**
**understanding [2]**  40/18 52/13
**understands [1]**  40/13
**UNITED [19]**
**unlawful [2]**  14/25 20/4
**unless [1]**  24/7
**unlimited [1]**  22/25
**unwise [1]**  38/3
**urge [1]**  38/9
**us [8]**  5/25 7/24 19/10 33/24 43/8
  48/24 50/1 50/4

## V

**value [1]**  13/4
**venire [3]**  21/16 21/17 22/7
**verdict [3]**  32/11 33/22 33/24
**video [2]**  46/12 56/5

**videos [2]**  49/16 53/24
**violation [2]**  15/6 15/25
**volume [2]**  13/5 13/5
**voluminous [1]**  55/24
**voluntarily [3]**  39/21 40/7 40/18
**vs. [1]**  3/5

## W

**waived [1]**  40/7
**Washington [1]**  18/7
**watch [2]**  8/22 9/14
**we'd [1]**  46/22
**weigh [1]**  30/22
**West [2]**  2/4 2/8
**wherever [1]**  49/4
**whichever [1]**  47/24
**who's [5]**  4/1 30/22 30/23 30/23
  30/23
**willfully [1]**  15/17
**wish [1]**  39/16
**withdraw [2]**  5/22 5/24
**witness [19]**
**witnesses [12]**
**word [3]**  4/18 10/8 21/17
**work [8]**  21/9 29/25 32/16 34/5 34/18
  47/2 56/21 57/5
**working [1]**  3/16
**works [2]**  21/8 34/3
**write [1]**  14/17
**writes [1]**  7/15
**writing [1]**  10/6

## Y

**you'd [1]**  4/7
**yours [1]**  28/23
**YUJING [2]**  1/9 3/5

## Z

**zero [8]**  19/8 19/11 19/12 19/15
  19/16 19/20 19/22 20/9
**ZHANG [18]**